PRESENT:  All the Justices

THE LAMAR COMPANY, LLC, ET AL.
                                          OPINION BY
v.   Record No. 042904          JUSTICE G. STEVEN AGEE
                                       November 4, 2005
BOARD OF ZONING APPEALS, CITY OF LYNCHBURG

          FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                    Mosby G. Perrow, III, Judge

     The Lamar Company, LLC, Eastern Heights, LLC, and Liberty

Broadcasting Network, Inc. (collectively "Lamar") appeal from

the judgment of the Circuit Court of the City of Lynchburg,

affirming the decision of the Lynchburg Board of Zoning Appeals

denying Lamar's request to change the location of two

billboards.  For the reasons stated below, we will affirm the

judgment of the trial court.

          I.    BACKGROUND AND MATERIAL PROCEEDINGS BELOW

     In November 2003, Lamar contacted Lynchburg zoning

officials requesting approval to remove two billboards and re-

erect those billboards approximately ten yards from their

present locations.[1]  The present and proposed billboard locations

were on parcels of land zoned as B-5 (General Commercial)

districts under the Lynchburg City Code.  The pertinent

Lynchburg code section regarding billboards in a B-5 district

provides:

_____

     [1] Lamar also planned to remove one additional billboard, but
because that billboard would not be re-erected, it is not at
issue in this case.

No person shall cause to be constructed or erected in a B-5 district any billboard except a billboard that replaces a then existing billboard in a B-5 district. Any billboard existing in a B-5 district at the time of enactment of this ordinance, and any replacements and any billboard existing in an I-2 or I-3 district at the time of the enactment of this ordinance shall not be considered as a nonconforming billboard provided said billboard is in compliance with this ordinance. All other billboards existing at the time of enactment of this ordinance shall be deemed nonconforming billboards.

Lynchburg City Code (hereinafter "City Code") § 35.1-26.1(1).[2]

City Code § 35.1-26.1(1) does not define the term "replaces," but § 35.1-11.1(a) provides that any undefined words in the zoning ordinance shall be defined according to Webster's Third New International Dictionary of the English Language Unabridged (Phillip B. Gove, Ph.D., ed., Merriam Webster, Inc., Springfield, Mass. 1961) (hereinafter "Webster's Third Dictionary"). See City Code § 35.1-11.1(a). That dictionary defines "replace" as follows:

**1 :** to place again **:** restore to a former place, position, or condition <*replaced* the card in the file> <*replaced* the king on the throne> **2 :** to take the place of **:** serve as a substitute for or successor of **:** SUCCEED, SUPPLANT <the saw and sawmill rapidly *replaced* the ax –*Amer. Guide Series: Mich.*> <the dried wood . . . has long been *replaced* by steel and concrete – T.H. Matthews> **3 :** to put in place of **:** provide a substitute or successor for <necessary to ~ all the machinery in the plant> **4 :** to fill the place of **:** supply an equivalent for <a broken toy should not be

---

[2] The current provisions of the Lynchburg City Code governing billboards can be found in City Code § 35.1-26.13.

2

immediately replaced –Bertrand Russell> <promised to ~ the money he had stolen>.

Id. at 1925.

Using the first definition, the City of Lynchburg Zoning Administrator concluded that new billboards would only satisfy the City Code if they were in "the exact same location" as (i.e. the footprint of) the existing billboards. Since Lamar's proposed billboards would not be in the footprint of the existing billboards, the Zoning Administrator denied Lamar's request to move the billboards.

Lamar appealed the Zoning Administrator's decision to Lynchburg's Board of Zoning Appeals (BZA). The BZA heard from representatives of both parties regarding the desired change of location for the billboards, the ordinance's general purpose, and its specific application in this case. The BZA also considered the desire for uniform interpretation of the ordinance, recognizing several past instances where the BZA determined that a replacement billboard must be in the identical or "footprint" location of its predecessor. Discussion centered on the definition of "replaces" and whether the Zoning Administrator properly interpreted that term to require footprint placement. Finding that the footprint interpretation of "replaces" was consistent with the definition found in

3

Webster's Third Dictionary and prior applications, the BZA affirmed the Zoning Administrator's decision.

Lamar appealed the BZA decision to the Circuit Court of the City of Lynchburg, as authorized by Code § 15.2-2314. Neither party introduced evidence beyond the record from the BZA proceeding. Lamar specifically represented to the trial court that "the facts are not in dispute" and "[t]he issue here is what the word replaces means in [City Code] Section 35.1-26.1."

After reviewing the Zoning Administrator's interpretation of the term "replaces," the trial court affirmed the BZA's decision in a letter opinion, incorporated in its final order. The trial court held:

> The [BZA's] decision is presumed to be correct, Virginia Code Section 15.2-2314. The petitioners have not rebutted that presumption. This Court cannot find that the Board ". . . applied erroneous principles of law or was plainly wrong and in violation of the purposes and intent of the zoning ordinance", Higgs v. Kirkbride, 258 Va. 567, 573 (1999).

We awarded Lamar this appeal.

## II. ANALYSIS

On appeal to this Court, Lamar raises three assignments of error, which can be condensed to the following two issues. First, whether the trial court erred by reviewing the BZA's decision under a standard of "appl[ying] erroneous principles of law or [being] plainly wrong" when Code § 15.2-2314 does not use that standard. And second, whether the trial court erred in

4

sustaining the BZA decision because "that decision was not supported by a preponderance of the evidence."

This case presents the first occasion for our review of paragraph five of current Code § 15.2-2314, which was added to the statute in 2003.[3] This new language provides as follows:

> In the case of an appeal from the board of zoning appeals to the circuit court of an order, requirement, decision or determination of a zoning administrator or other administrative officer in the administration or enforcement of any ordinance or provision of state law, or any modification of zoning requirements pursuant to § 15.2-2286, the decision of the board of zoning appeals shall be presumed to be correct. The appealing party may rebut that presumption by proving by a preponderance of the evidence, including the record before the board of zoning appeals, that the board of zoning appeals erred in its decision.

Code § 15.2-2314 (emphasis added).

Prior to the foregoing 2003 amendment, the common law standard of review provided that the presumption of correctness of a BZA decision was rebutted only when the BZA applied "erroneous principles of law" or its interpretation was "plainly wrong and in violation of the purpose and intent of the zoning ordinance." See, e.g., City of Suffolk v. Board of Zoning Appeals, 266 Va. 137, 142, 580 S.E.2d 796, 798 (2003).

Lamar argues that the trial court erred when it affirmed the BZA's decision because the trial court opined it could not

_____

[3] The 2003 amendments to Code § 15.2-2314 made minor cosmetic changes to the existing statute and added the fifth and sixth paragraphs.

5

"find that the [BZA] 'applied erroneous principles of law or was plainly wrong and in violation of the purposes and intent of the zoning ordinance.' " Lamar contends that even though the trial court cited to the proper statute, it used the prior standard of review, "erroneous principles of law or . . . plainly wrong," instead of the new statutory standard of review, "that the board of zoning appeals erred in its decision."[4] Lamar argues it did rebut the presumption that the BZA decision was correct by showing by a preponderance of the evidence that the BZA erred.

In response, the BZA argues that the trial court correctly relied on the existing statute, as evidenced by the citation in its opinion letter to Code § 15.2-2314 as the basis of review. In addition, the BZA argues that the "preponderance of the evidence" burden of proof applies only to disputed issues of fact, and thus is inapplicable to the case at bar, which presents a purely legal question – interpreting the term "replaces" in the Lynchburg City Code. Accordingly, the BZA avers that if the trial court did not err in the resolution of that legal question, then it properly applied the presumption of correctness. We agree with the BZA.

While Lamar is correct in the abstract as to the statutory change to the standard of review under Code § 15.2-2314, its

---

[4] The parties agree that Code § 15.2-2314, as amended in 2003, was in effect and is the applicable statute in the case at

6

argument has no nexus to the issue before the trial court in this case.  The "preponderance of the evidence" standard is used in analyzing the sufficiency of the record to prove a particular claim of fact.[5]  Thus, in Code § 15.2-2314, a "preponderance of the evidence" may rebut the presumption of correctness when there is a factual dispute and the truth and sufficiency of those facts must be weighed.  In this respect, the 2003 amendments to Code § 15.2-2314 changed the standard of review where issues of fact are before the trial court.

But the case at bar does not involve disputed issues of fact.  The parties agreed no questions of fact were before the trial court and neither party presented additional evidence. The sole issue before the trial court was a question of law – whether the BZA correctly interpreted the term "replaces" under City Code § 35.1-26.1(1).  The trial court had no need or basis to apply the statute's "preponderance of the evidence" burden of

bar.

[5] See, e.g., Northern Virginia Power Co. v. Bailey, 194 Va. 464, 471, 73 S.E.2d 425, 430 (1952) (quoting Sargent v. Massachusetts Accident Co., 29 N.E.2d 825, 827 (1940)), where this Court stated that "preponderance of the evidence" is the

power to convince the tribunal which has the determination of the fact, of the actual truth of the proposition to be proved.  After the evidence has been weighed, that proposition is proved by a preponderance of the evidence if it is made to appear more likely or probable in the sense that actual belief in its truth, derived from the evidence, exists in the mind or minds of the tribunal, notwithstanding any doubts that may linger there.

proof standard because no issue of fact was before it for resolution. In that regard, the preponderance standard has no bearing on the trial court's consideration as to whether the BZA "erred in its decision" on a principle of law.

The trial court begins its review with the presumption, unchanged by the 2003 amendments, that the BZA decision is correct. Code § 15.2-2314. In order to rebut the presumption under the facts in this case, Lamar was required to establish that the BZA erred in determining the legal question of the proper interpretation of the term "replaces" in City Code § 35.1-26.1(1).

In the case at bar, the Zoning Administrator chose from amongst the possible definitions of "replaces," an interpretation that he determined best reflected the meaning of the word within the context of the ordinance. Although the "footprint" requirement may not have been the only possible interpretation, it certainly falls within the reasonable scope of the Webster's Third Dictionary definition required by City Code § 35.1-11.1(a). Both the Zoning Administrator and the BZA had previously interpreted City Code § 35.1-26.1(1) to require "footprint" replacement. Both were familiar with the use of the word "replaces" in comparison to the use of this and similar words (e.g., "relocate") throughout the City's zoning ordinances.

Nothing in the amendments to Code § 15.2-2314 eliminates the long-standing desire for consistent interpretation of zoning ordinances, an objective best accomplished by those charged with enforcing such ordinances.  "A consistent administrative construction of an ordinance by the officials charged with its enforcement is entitled to great weight."  Masterson v. Board of Zoning Appeals, 233 Va. 37, 44, 353 S.E.2d 727, 733 (1987); see also Seatrain Lines, Inc. v. Gloria Mfg. Corp., 222 Va. 279, 281, 279 S.E.2d 166, 168 (1981) (discussing the deference given to agencies interpreting regulations).

Deference to such administrative construction in such circumstances is appropriate for several reasons.  Zoning ordinances establish and maintain order within local areas, see Board of County Supervisors v. Carper, 200 Va. 653, 660, 107 S.E.2d 390, 395 (1959); in turn, uniform application and interpretation of specific zoning ordinances furthers this objective.  Zoning administrators and boards of zoning appeals charged with applying zoning ordinances are able to ensure consistent application consonant with a local government's intent for specific ordinances.  Such agencies develop expertise in the relationship between particular textual language and a local government's overall zoning plan.

Each of these factors supports an appellate court's deference to the decision of a zoning administrator or board of

zoning appeals in interpreting an ordinance unless that body "erred in its decision" concerning a matter of law. Moreover, these factors also reflect that the trial court did not err in affirming the BZA's application of the term "replaces" as a matter of law in requiring footprint location for replacement of the subject billboards.

Lamar further argues that the BZA's interpretation of the use of the word "replaces" in City Code § 35.1-26.1(1) is internally inconsistent and also inconsistent with another provision in the City's zoning ordinances. First, Lamar contends that City Code § 35.1-26.1(1) "broadly using the article 'a' to describe the district (rather than 'the,' 'that,' etc.) indicates that a replacement for a billboard in one B-5 district may be placed in any B-5 district, without limitation."

Second, Lamar avers that City Code § 35.1-26.1(10), which prohibits billboards from being "erected, rebuilt, altered or relocated without a permit from the city's division of inspections . . ." implies that "replaces" in subsection (1) must be the equivalent of "relocate." This is so, it argues, because nonconforming billboards cannot be moved, so the only billboards that could possibly be "relocated" under this subsection must be those billboards, such as the ones at issue

in the present case, that are conforming billboards under City Code § 35.1-26.1(1).[6]

Lastly, Lamar argues that City Code § 35.1-27 calls the BZA's interpretation of City Code § 35.1-26.1(1) into question because City Code § 35.1-27 specifically prohibits "nonconforming uses [from being] moved, in whole or in part, to any other portion of the lot or parcel of land occupied by such nonconforming use at the time of the adoption of this ordinance." City Code § 35.1-27(e)(2). Because the City Code unambiguously prohibits the relocation of nonconforming structures, Lamar contends the term "replaces" in City Code § 35.1-26.1(1) cannot properly be interpreted to prohibit relocation of a conforming use without creating an inconsistency between the ordinances.

None of these arguments are convincing. Lamar's arguments view the language of the ordinances it cites in isolation and not in light of the texts' context within each ordinance. City Code § 35.1-26.1 is a general ordinance relating to billboards. Subsection 1, however, specifically addresses billboards located in B-5, I-2, and I-3 districts. By focusing on the subsection's use of the general modifier "a" versus a specific modifier such as "the" or "that," Lamar overlooks the significant word choice

_____

[6] The parties agreed that the existing billboards were a conforming use under the City Code.

11

in this section – the use of the word "replaces" and ignores the distinctly different meanings of the words "replace" and "relocate."

In addition, subsection 1 applies narrowly (only to billboards in B-5, I-2, and I-3 districts), while subsection 10 applies to all billboards. While a B-5 replacement billboard might be "rebuilt" as a replacement and receive a permit under subsection 10, an I-2 billboard might be relocated. This distinction shows not that the local government intended "replace" and "relocate" to be equivalent terms, but to be terms of distinct meaning.

A similar distinction is found between subsection 1 of City Code § 35.1-26.1, which is limited to billboards in B-5, I-2, and I-3 districts, and City Code § 35.1-27, which applies to all nonconforming uses. City Code § 35.1-26.1(1) is the specific ordinance dealing with a conforming use billboard. As such, City Code § 35.1-27 would not apply as it deals with a different subject matter – all nonconforming uses. The language of City Code § 35.1-26.1(1) is the local government's expression of restriction barring relocation of a conforming use. Indeed, since a nonconforming use could not be relocated, City Code § 35.1-26.1(1) is logically written as it is so as to restrict the otherwise conforming use billboard from claiming a right to relocate. Moreover, even if one assumed a conflict between the

12

two ordinances, the more specific ordinance, City Code § 35.1-26.1, would control.  <u>Natrella v. Board of Zoning Appeals</u>, 231 Va. 451, 461, 345 S.E.2d 295, 302 (1986).

## III. CONCLUSION

The trial court, under the facts of this case, did not apply an incorrect standard of review under Code § 15.2-2314 as it solely resolved a question of law.  Because Lamar did not assign error to any factual basis of the trial court's decision, the presumption of the correctness of the BZA's decision is not at issue as to any factual matter.  Therefore, finding no error in the judgment of the trial court, we will affirm that judgment.

<u>Affirmed</u>.