COURT OF APPEALS OF VIRGINIA

Present:  Judges Frank, Kelsey and Alston
Argued by teleconference

ANTHONY MOORE

OPINION BY
v.      Record No. 1396-13-1                    JUDGE D. ARTHUR KELSEY
                                                MAY 20, 2014

MARTIN D. BROWN, COMMISSIONER,
 VIRGINIA DEPARTMENT OF SOCIAL SERVICES[*]

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Marjorie T. Arrington, Judge

E. Leslie Cox (Carrollyn C. Cox; Cox and Cox Attorneys,
on brief), for appellant.

Eric J. Reynolds, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General; Rita W. Beale, Deputy
Attorney General; Kim F. Piner, Senior Assistant
Attorney General, on brief), for appellee.

The Commissioner of the Virginia Department of Social Services (DSS) made an

administrative finding that Anthony Moore committed an act of sexual abuse of a child while he

acted as a "person responsible for [the child's] care," pursuant to Code § 63.2-100(4) (defining

"Abused or neglected child").  Moore appealed to the circuit court, which affirmed the DSS

finding.  We reverse the circuit court's holding and vacate the finding made by DSS.

I.

The parties vigorously disputed most of the underlying facts at every stage of this case.

None of these disputes, however, are relevant to our holding, and thus, we recite only those

undisputed facts pertinent to our review.

In 2011, DSS investigators accused Moore of committing an act of sexual abuse of a

child.  The child claimed the abuse occurred when she was three or four years old during the

PUBLISHED

---

[*] The notice of appeal names Martin D. Brown as the Commissioner of the Virginia
Department of Social Services.  Margaret R. Schultze currently serves as Commissioner.

time that she resided temporarily in her grandmother's home. Moore resided in that home for a brief period between March 1998 and February 1999, while the child was only one-and-a-half years old to two-and-a-half years old.[1] No evidence suggested that Moore ever babysat the child, ever asked to care for the child, or ever volunteered to do so.

Acting through its designated hearing officer, the DSS Commissioner found that Moore committed the alleged sexual abuse of the child. The Commissioner recognized that this conclusion required a factual finding that, at the time of the abuse, Moore was either a parent of the child or some "other person responsible for his care." Code § 63.2-100(4). Given that Moore was not a parent, the Commissioner addressed the "preliminary issue" of whether he "qualifie[d] as a 'caretaker.'" App. at 125. Because no evidence suggested Moore was in fact responsible for the child's care — a point DSS concedes on appeal, see Oral Argument Audio at 26:28 to 26:56 — DSS legally "deemed [him] to be a caretaker" because he was "a relative over the age of 18" and "living in the home with the child" at the time of the abuse, App. at 125.

Alleging thirteen grounds of error, Moore appealed to the circuit court under the Virginia Administrative Process Act, Code §§ 2.2-4025 to 2.2-4030. The circuit court affirmed, focusing primarily on the sufficiency of the evidence supporting the allegation of abuse.

II.

Moore appeals to us, contending that the circuit court and DSS erred on various grounds. Concluding that one of these grounds is dispositive — whether DSS improperly deemed Moore a caretaker — we limit our discussion to this one point.

Virginia's criminal laws punish child abuse no matter who commits it. See Code §§ 18.2-67.3, 18.2-67.4:2, 18.2-67.10. In contrast, the authority of DSS to make administrative

---

[1] No evidence appeared to reconcile these disparate time lines. Given our holding, however, we need not address this point.

findings of child abuse is far more narrow. Code § 63.2-1505 only grants DSS the authority to investigate and make administrative findings with respect to any "abused or neglected" child. The statutory definition of "[a]bused or neglected child" is, among other things, a child "[w]hose parents or other person responsible for his care commits or allows to be committed any act of sexual exploitation or any sexual act upon a child in violation of the law." Code § 63.2-100(4); see also 22 Va. Admin. Code § 40-705-30(E).

Acting pursuant to its authority to issue regulations, Code § 63.2-217, DSS promulgated an administrative regulation to define the scope of a caretaker:

> "Caretaker" means any individual having the responsibility of providing care for a child and includes the following: (i) parent or other person legally responsible for the child's care; (ii) any other person who has assumed caretaking responsibility by virtue of an agreement with the legally responsible person; (iii) persons responsible by virtue of their positions of conferred authority; and (iv) adult persons residing in the home with the child.

22 Va. Admin. Code § 40-705-10. At an administrative hearing, DSS bears the burden of proving that the suspect committed the abuse and that he was either a parent or some other person responsible for the child's care. See Code § 2.2-4020(C) (assigning burden of proof); see generally Navistar, Inc. v. New Balt. Garage, Inc., 60 Va. App. 599, 611 n.2, 731 S.E.2d 13, 19 n.2 (2012).

In this case, DSS presented no evidence to show that Moore was a parent or a person responsible for the child's care. Instead, DSS asserted that Code § 63.2-100(4) and 22 Va. Admin. Code § 40-705-10 permitted it to legally *deem* Moore a caretaker based solely on the fact that he was an adult residing in the home of the child. The DSS Commissioner accepted this assertion, recognizing that it was a threshold issue upon which the entire case depended. The first paragraph of the hearing officer's analysis began:

> The preliminary issue is whether [Moore] qualifies as a "caretaker." According to the CPS Guidance Manual, a relative over the age of 18

living in the home with the child is deemed to be a caretaker. As the Appellant was a relative by marriage and over the age of 18 at the time the alleged abuse occurred, he may be considered a caretaker despite the testimony that he was never [the child's] babysitter.

App. at 125.[2] This reasoning, Moore contends, cannot be squared with the governing statutes and regulations.

We begin our analysis by first calibrating the scope of our judicial review. "Pure statutory construction, a matter within the 'core competency of the judiciary,' requires *de novo* review." Citland, Ltd. v. Commonwealth ex rel. Kilgore, 45 Va. App. 268, 275, 610 S.E.2d 321, 324 (2005) (citation omitted). "This axiom stems from basic principles of separation of powers. It is emphatically the province and duty of the judicial department to say what the law is." Va. Emp't Comm'n v. Comty. Alts., Inc., 57 Va. App. 700, 708, 705 S.E.2d 530, 534 (2011) (internal quotation marks omitted). "'Virginia courts do not delegate that task to executive agencies.'" Id. (quoting Finnerty v. Thornton Hall, Inc., 42 Va. App. 628, 635, 593 S.E.2d 568, 571 (2004)).

On the other hand, "we take a very different approach to interpreting administrative regulations." Family Redirection Inst., Inc. v. Dep't of Med. Assistance Servs., 61 Va. App. 765, 772, 739 S.E.2d 916, 920 (2013). We afford great deference to administrative agencies in their interpretation of their own regulations. That deference, however, dissipates when the

---

[2] Though the DSS hearing officer noted that Moore was a relative of the victim, the decision did not turn, even in part, on the nature of his familial relationship or the potential inferences that could be drawn from it. Instead, DSS argues on appeal only that "[b]ecause Mr. Moore was an *adult* residing in the home where the victim child resided, he met the definition of caretaker under 22 VAC 40-705-10." Appellee's Br. at 11 (emphasis added). See also id. at 14 ("The local department . . . presented evidence that the Appellant was considered a 'caretaker' as defined by 20 VAC 40-705-10 in that he was an *adult* . . . residing in the home of the child at the time of the incident. (emphasis added)); id. (Thus, Moore "may be considered a caretaker despite the testimony that he was never [the child's] babysitter.); id. (Moore was "an *adult* residing in the same home as the child at the time of the incident, and therefore was deemed a caretaker under the CPS regulations." (emphasis added)).

agency acts outside "its delegable authority" by failing to construe its regulations "reasonably and in a manner consistent with the legislative directive." Id. After all, "deference is not abdication, and it requires us to accept only those agency interpretations that are reasonable in light of the principles of construction courts normally employ." Bd. of Supervisors v. State Bldg. Code Tech. Review Bd., 52 Va. App. 460, 466, 663 S.E.2d 571, 574 (2008) (internal quotation marks omitted).

Adhering to these principles, we believe DSS misinterpreted both the enabling statute and its own regulation. Code § 63.2-100(4) requires that the suspect be either a parent of the abused child or some "other person responsible for his care." A person *responsible* for a child's care necessarily means an adult who — by law, social custom, express or implied acquiescence, collective consensus, agreement, or any other legally recognizable basis — has an obligation to look after the well-being of a child left in his care.[3] Simply being an adult residing in the same home as a child does not make one responsible for every child in the home. One renting a spare

---

[3] Our cases illustrate the numerous circumstances in which this definition can be met. For example, cases interpreting Code § 16.1-228, within the chapter governing juvenile and domestic relations district courts, classify persons that qualify as a "person responsible" for an abused or neglected child. Cumbo v. Dickenson Cnty. Dep't of Soc. Servs., 62 Va. App. 124, 742 S.E.2d 885 (2013) (uncle custodian); DeAmicis v. Commonwealth, 31 Va. App. 437, 524 S.E.2d 151 (2000) (*en banc*) (professional counselor). Cases interpreting the criminal statute for child abuse and neglect, Code § 18.2-371.1, also classify a "person responsible" for a child's care. Carrington v. Commonwealth, 59 Va. App. 614, 721 S.E.2d 815 (2012) (live-in boyfriend); Flowers v.Commonwealth, 49 Va. App. 241, 639 S.E.2d 313 (2007) (friend's mother supervising sleepover); Bean-Brewer v. Commonwealth, 49 Va. App. 3, 635 S.E.2d 680 (2006) (child care provider); Snow v. Commonwealth, 33 Va. App. 766, 537 S.E.2d 6 (2000) (uncle driving vehicle). Further, cases interpreting Code § 18.2-370.1, which criminalizes taking indecent liberties with a child, illustrate persons who have a "custodial or supervisory relationship over a child." Sadler v. Commonwealth, 51 Va. App. 17, 654 S.E.2d 313 (2007) (athletic coach); Guda v. Commonwealth, 42 Va. App. 453, 592 S.E.2d 748 (2004) (school security officer). A "caretaker" or person "responsible for the care of a child," pursuant to 22 Va. Admin. Code 40-705-30, is also demonstrated in Mulvey v. Jones, 41 Va. App. 600, 587 S.E.2d 728 (2003) (teacher).

bedroom, for example, would hardly think that he was somehow taking on the responsibility to care for the landlord's children merely because of his presence in the home.

We find equally puzzling the assertion by DSS that its own regulation legally deems all adult persons residing in the home with the child to be within the scope of Code § 63.2-100(4). The DSS regulation defines a "[c]aretaker" as any person "having the responsibility of providing care for a child" and then gives examples of those who might be "include[d]" in that category. 22 Va. Admin. Code § 40-705-10. The illustrative (not exhaustive) list includes four sub-categories: those "legally responsible for the child's care," persons who have agreed to be responsible, those with "positions of conferred authority," and "adult persons residing in the home with the child." Id.

The first three sub-categories, by their very nature, necessarily describe individuals who would be persons "responsible" for the child's care under Code § 63.2-100(4). However, the fourth sub-category — any adult person "residing in the home with the child" — may or may not be someone responsible for the child's care. It would depend on the circumstances. If the adult resident had expressly or implicitly assumed "the responsibility of providing care" for the child, 22 Va. Admin. Code § 40-705-10, as the first half of the definition of "[c]aretaker" in the regulation states, then he would fall within the statutory and regulatory definition. If not, he would simply be a non-caretaker, co-resident in the home.

We concede that the syntax of the regulation, read literally without any regard for the enabling statute, could suggest just what DSS claims: Any adult residing in the home is *ipso facto* a caregiver as a matter of law. We cannot, however, read the regulation in a vacuum. Administrative agencies do not legislate; they merely enforce the statutory authority delegated to them by the legislature. Agency regulations, therefore, cannot contradict governing enabling statutes. See Kavanaugh v. Va. Birth-Related Neurological Injury Comp. Program, 60 Va. App.

440, 447, 728 S.E.2d 527, 531 (2012); see generally 1 Richard J. Pierce, Jr., Administrative Law Treatise § 6.4, at 325 (4th ed. 2002).

It follows, then, that regulations should be read — if possible — to be consistent with governing enabling statutes. Here, the enabling statute limits DSS's authority to findings of abuse committed by a parent or "other person responsible" for the abused child's care. Code § 63.2-100(4). It seems inescapable to us that a person who is *not* in any way truly responsible for the child's care *cannot* be said (either by us or DSS) to be a "person responsible" for the child's care. Id. And we fail to see how residing in the same home as the child, without more, changes that fact. Our interpretation of 22 Va. Admin. Code § 40-705-10, as well as its administrative application by DSS, must necessarily take into account this overarching statutory requirement.

### III.

In sum, absent a factual basis for the assertion that Moore was a person responsible for the child's care, DSS could not legally deem him so simply because of his residing presence in the home.[4] We read neither the statute nor the administrative regulation to authorize that conclusion. We thus reverse the circuit court's holding and vacate the administrative finding made by DSS.

Reversed.

---

[4] On brief, Moore contends DSS acted without "subject matter jurisdiction" thus making its decision in this case "null and void." Appellant's Br. at 8. We reject this characterization. DSS made a legally invalid interpretation of its own regulation and incorrectly applied it to this case. It does not follow that the erroneous administrative finding was *void* because of a lack of subject matter jurisdiction. See generally Winslow v. Commonwealth, 62 Va. App. 539, 545, 749 S.E.2d 563, 566 (2013) (warning "'against the *faux* elevation of a [tribunal's] failure to comply with the requirements for exercising its authority to the same level of gravity as a lack of subject matter jurisdiction'" (quoting De Avies v. De Avies, 42 Va. App. 342, 345-46, 592 S.E.2d 351, 352 (2004) (*en banc*))). Instead, the erroneous finding by DSS was merely *voidable* on direct appeal — which is the only remedy available under these circumstances. See generally J.P. v. Carter, 24 Va. App. 707, 723-24, 485 S.E.2d 162, 170-71 (1997) (holding DSS had subject-matter jurisdiction to make final agency determination even if doing so may have violated statutory requirements designating hearing officers).