COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Beales and Decker
Argued at Alexandria, Virginia

UNPUBLISHED

MATTHEW MILLS

MEMORANDUM OPINION[*] BY
v.      Record No. 0843-17-4          JUDGE MARLA GRAFF DECKER
                                       JANUARY 16, 2018

VIRGINIA DEPARTMENT OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Steven S. Smith, Judge

Amanda P. DeFede (McIntyre DeFede Law, PLLC, on brief), for
appellant.

Ellen R. Fulmer-Malenke, Assistant Attorney General (Mark R.
Herring, Attorney General; Cynthia V. Bailey, Deputy Attorney
General; Kim F. Piner, Senior Assistant Attorney General, on brief),
for appellee.


Matthew Mills appeals the decision of the circuit court affirming the determination of the

Department of Social Services (the Department) that he committed level three neglect of his child.

First, he argues that the circuit court erred in ruling that substantial evidence supported a

disposition of founded level three "physical neglect—inadequate shelter" against him. Second,

he contends that the circuit court erred in finding that the administrative hearing officer "applied

the correct legal standard within the scope of her authority" to support her founded disposition.

Third, he suggests that the circuit court erred in holding that the record did not support his claim

that the hearing officer's decision was arbitrary.

We hold that the circuit court correctly applied the relevant law to the facts in the appeal

before it pursuant to the Virginia Administrative Process Act. Accordingly, we affirm the circuit

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

court's order holding that substantial evidence in the record supports the hearing officer's founded level three disposition of physical neglect based on inadequate shelter.[1]

## I. BACKGROUND[2]

On July 29, 2015, the Prince William County Department of Social Services (the local agency) received an anonymous complaint about the conditions of the home occupied by the appellant, his wife, and their son. In response to the caller's concern that the home appeared to be "a hoarder's home" and a fire hazard, two social workers visited the home. While there, they met with the appellant, a musician and music teacher, and his wife. The social workers removed I.M., the couple's four-year-old son, from the home that day, and he temporarily resided with his grandmother until the home had been decluttered and cleaned. After interviewing the appellant and his wife, inspecting the premises, and conducting additional investigation, the local agency pronounced a disposition against the appellant of founded level two "physical neglect—inadequate shelter."

The appellant challenged the local agency's level two founded disposition. Review proceedings were held on February 2, 2016, before an administrative hearing officer of the Department. The local agency introduced a juvenile and domestic relations district court

---

[1] Subsequent to the filing of this appeal, the record was sealed by the circuit court pursuant to Code § 17.1-513.1. Nevertheless, the appeal necessitates unsealing relevant portions of the record for purposes of resolving the issues raised by the appellant. Evidence and factual findings below that are necessary in order to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, ___ Va. ___, ___ n.1, 805 S.E.2d 775, 777 n.1 (2017).

[2] On appeal, this Court views the evidence "in the light most favorable to the prevailing party below," in this case the Department, "and its evidence is afforded all reasonable inferences fairly deducible therefrom." Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 40, 764 S.E.2d 284, 287 (2014) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991)).

adjudicatory order from a different proceeding in which the appellant and his wife were found to have abused and neglected I.M. Additionally, Kaneetha Grant, one of the social workers who visited the home, testified regarding her findings. The local agency also introduced a summary of Grant's home visit and investigation, which included photographs depicting the condition of the residence during her visit and a review of I.M.'s medical records. Finally, the agency introduced testimony given in the adjudicatory hearing by one of I.M.'s pediatricians, Dr. Jon Farber.

Grant described the conditions of the appellant's home during her visit on July 29, 2015. The house had an "intolerable" odor and reeked so "overwhelming[ly]" that she could smell urine and feces before entering it. The family shared the house with four dogs and six cats. On the kitchen floor, there was a pad that the appellant said the dogs used "to relieve themselves." The "pee pad" was saturated with urine, and the overflow was on the floor around the pad. A pot on the nearby stove contained a pad similar to the urine-soaked pad seen on the floor.

The kitchen sink, stove, window ledge, and counters were covered with dirty dishes, pots, trash, wine bottles, and other items. The refrigerator was filled with food that "smell[ed] rotten." Two bags full of trash were also in the kitchen. Bugs were crawling on the kitchen floor and in the living room. Both toilets were "filthy with feces and urine" on the toilet seat and cover. Additionally, the sinks in each of the two bathrooms and the bathtub were dirty.

Grant also reported a large quantity of clothing, boxes, broken items, and other clutter. The front door "barely opened" because of items stacked behind it, and Grant had to "walk sideways" due to the clutter. The living room floor was "covered with mounds of trash, toys, clothing, shoes, boxes and other items about 4 to 5 feet high." Furniture in the living room and dining room was similarly piled high with various items. The master bedroom was piled with

items with one walkway to the bed. The single room in the house that was clean and free of clutter was the room used by the appellant as a music room.[3]

In conducting her investigation, Grant also spoke with the appellant's wife about the child's behavior and gathered medical records. The wife reported that I.M. might have a "sensory processing disorder" and might be "on the autis[m] spectrum." He had been diagnosed with attention deficit hyperactivity disorder (ADHD) and had "severe" temper tantrums since he was fifteen months old. She said that I.M. displayed "very violent" behavior "several times weekly." According to the wife, I.M.'s behavior included "throw[ing] things at [the family's] dogs and [his parents]" as well as "[b]reak[ing] mirrors, mugs, etc."

Grant testified that due to the "amount of items . . . piled on top of each other" and I.M.'s level of activity, he "could have been running" and tripped or had something fall on him because there was no room for him to play. She also opined that due to the number of items in the living room and kitchen, it would be "a hazard for anyone to rush to get out" in the event of an emergency. She noted that "the totality of . . . the conditions" made it difficult for I.M. "to run around or just be safe."

The local agency also introduced testimony from Jon M. Farber, M.D., one of I.M.'s pediatricians who qualified as an expert in pediatrics. Based on his examination of the photographs of the home, Dr. Farber considered it to be "a safety hazard." He noted that the toilet appeared to be covered in feces and that the "clutter[ed]" condition of the home presented a danger from "accidents, tripping, falling, pulling things down on yourself" and also perhaps from the nature of the items to which I.M. "might have access." Dr. Farber further testified that if

---

[3] The appellant admitted to Grant on the day of her visit that the conditions in the home were "pretty bad." When Grant next visited, on August 12, 2015, less than a month later, she could still detect a "faint odor from the animals," but she also smelled air freshener, and the home was "very clean" and "tidy."

there was an "environmental problem in the home" such as "a hoarding situation," or if the house was "unclean" such that there was feces on the floor or toilet, the circumstances could cause respiratory illness, stomach illness, or other infections.

The appellant testified at the hearing. He admitted that he and his wife had been "a little more neglectful" than usual for approximately three months before Grant visited. He suggested that due to a water leak in the basement, many items were moved to other floors of the home. He also said that his wife was a collector of cast iron, an avid recycler, and a regular adopter of unwanted pets. He acknowledged that at the time of the social workers' visit, the bed in the master bedroom and the couch in the living room were the only places in the house to sit. The appellant also recounted that at the time of the social workers' visit, the master bed was "[t]he only clear bed" available in the home and that I.M. routinely "co-sle[pt]" with him and his wife. Finally, he explained that the family's cats routinely sat on the closed lid of the toilet in one of the bathrooms, which the family did not use because it did not work properly. The appellant denied that the "black stuff" in the photos of one of the toilets was feces, instead suggesting that it was cat hair. He admitted that one of the family's dogs had "bathroom issues."

The appellant acknowledged that the single clean room depicted in the photographs was his dedicated home office and music studio. He testified that he "write[s]" the room "off as [his] home office" and was careful to maintain it due to the possibility of an Internal Revenue Service audit.

The Department's hearing officer, in her decision of March 14, 2016, made findings based on the local agency's evidence. She found that in the kitchen, "no horizontal surface was visible as [all such surfaces were] entirely obstructed by piled items." She also found that photos of the two bedrooms depicted them as completely obstructed with the exception of a "narrow walkway" to the master bed. Additionally, she observed that photos of the bathrooms

"display[ed] visible dirt and . . . toilets . . . caked in dark matter, whether cat hair or feces." She further noted that the contrasting condition of the music room demonstrated that the appellant "had the ability to maintain the home in clean, safe and sanitary condition[] but that he did not do so with respect to the other rooms of the home." The hearing officer also recited the testimony of Dr. Farber that photographs of the home showed multiple health threats—the unsanitary conditions; the "hazard[s]" that presented the risk of "tripping" and "pulling things down on yourself"; and the additional hazards posed by the limitations on ingress and egress in the event of an emergency.

The hearing officer noted that although no evidence showed that I.M. "suffered an actual injury," proof of a mere threat of injury was sufficient. She concluded, however, that the evidence did not establish that "*moderate* harm" was "likely," as required for a level two founded complaint of physical neglect. (Emphasis added). Instead, she found that the evidence proved by a preponderance that the appellant committed physical neglect that "threaten[ed I.M.] with *minimal* harm," as required for a level three founded complaint. (Emphasis added). Thus, she concluded that the neglect was a level three, less severe than the local agency had determined.

The appellant appealed the hearing officer's decision to the circuit court. Following the parties' arguments, the court upheld the hearing officer's founded level three determination. In doing so, the judge ruled that the hearing officer "properly applied . . . statutory authority [to] find[] . . . physical neglect and inadequate shelter level three." He opined that the record contained "plenty" of evidence "that a reasonable mind would accept as adequate to support the conclusion" reached and that it amounted to the necessary "substantial evidence." The judge also found that the hearing officer did not impermissibly expand the scope of what constitutes inadequate shelter and that she applied the law correctly. He noted that although the appellant's

- 6 -

wife received a more serious founded level two physical neglect determination, the court did not "have the record of the wife's case or hearing" and that, without it, the court could not conclude that the rulings were arbitrary in relation to one another. The judge added that, in any event, the wife's case record would not have been relevant.

## II. ANALYSIS

The appellant challenges the circuit court's affirmance of the hearing officer's founded level three determination. He argues that the court erred by ruling that the record contains substantial evidence to support the founded disposition of level three physical neglect based on inadequate shelter. The appellant also contends that the circuit court erred in concluding that the hearing officer applied the correct legal standard and acted within her statutory authority when she made the level three determination. Finally, he suggests that the circuit court incorrectly refused to deem the hearing officer's decision to be arbitrary. For the reasons that follow, we hold that the circuit court did not err.

### A. Standard of Review

We consider the assignments of error in light of well-established legal principles. "Judicial review of a . . . founded disposition of child abuse [or neglect] is governed by the [Virginia] Administrative Process Act (APA) . . . ." Jones v. West, 46 Va. App. 309, 322, 616 S.E.2d 790, 797 (2005) (citing Code § 63.2-1526(B)). Pursuant to the APA, the appealing party bears the burden of "designat[ing] and demonstrat[ing] an error of law subject to review by the [C]ourt." Code § 2.2-4027. The APA identifies four types of errors that are subject to challenge on appeal. See id. The appellant alleges that the Department committed two such errors because the record lacked substantial "evidentiary support for findings of fact" and the Department did not "compl[y] with statutory authority . . . and the factual showing respecting violations" in connection with the case decision. See id.

- 7 -

"Pure statutory construction . . . requires *de novo* review." Moore v. Brown, 63 Va. App. 375, 380, 758 S.E.2d 68, 70 (2014) (quoting Citland, Ltd. v. Commonwealth ex rel. Kilgore, 45 Va. App. 268, 275, 610 S.E.2d 321, 324 (2005)); see Nielsen Co. (US), LLC v. Cty. Bd., 289 Va. 79, 88, 767 S.E.2d 1, 4 (2015) (holding that "courts do not defer to an agency's construction of a statute" but "a court may afford greater weight than normal to an agency's position" if the statute is "'obscure or its meaning [is] doubtful'" and the agency is responsible for administering it (quoting Superior Steel Corp. v. Commonwealth, 147 Va. 202, 206, 136 S.E. 666, 667 (1927))). It is axiomatic that "Virginia courts do not delegate [the task of interpreting the law] to executive agencies." Moore, 63 Va. App. at 380, 758 S.E.2d at 70-71 (quoting Va. Emp't Comm'n v. Comty. Alts., Inc., 57 Va. App. 700, 708, 705 S.E.2d 530, 534 (2011)). However, the standard is different when it comes to review of regulations. Courts "afford great deference to administrative agencies in their interpretation of their own regulations" unless the agency fails to construe them "'reasonably and in a manner consistent with the legislative directive'" or "acts outside 'its delegable authority'" in some other way. Id. at 380, 758 S.E.2d at 71 (quoting Family Redirection Inst., Inc. v. Dep't of Med. Assistance Servs., 61 Va. App. 765, 772, 739 S.E.2d 916, 920 (2013)).

On matters of fact, review is limited to the administrative record, and the reviewing court must view the evidence in the light most favorable to the Department as the prevailing party. See Carter v. Gordon, 28 Va. App. 133, 141, 502 S.E.2d 697, 701 (1998). Simply put, a court's review of an administrative agency's factual findings is "limited to determining whether substantial evidence in the agency record supports its decision." Jones, 46 Va. App. at 323, 616 S.E.2d at 797 (quoting Avante at Lynchburg, Inc. v. Teefey, 28 Va. App. 156, 160, 502 S.E.2d 708, 710 (1998)). "The phrase 'substantial evidence' refers to 'such relevant evidence as a reasonable mind *might* accept as adequate to support a conclusion.'" Mulvey v. Jones, 41

- 8 -

Va. App. 600, 603, 587 S.E.2d 728, 729 (2003) (quoting Va. Real Estate Comm'n v. Bias, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983)). "The reviewing court may reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion." Comm'r v. Fulton, 55 Va. App. 69, 80, 683 S.E.2d 837, 842 (2009) (quoting Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988)).

### B. Substantial Evidence to Prove Level Three Physical Neglect

The appellant argues that the record does not contain substantial evidence supporting the founded disposition of level three physical neglect based on inadequate shelter. We disagree.

An abused or neglected child is one "[w]hose parent[] . . . neglects or refuses to provide care necessary for his health." Code § 63.2-100(2). As relevant here, physical neglect occurs if the parent "fail[s] to provide . . . shelter . . . to the extent that the child's health or safety is endangered." 22 VAC 40-705-30(B) (2009).[4] This endangerment may be based upon not only "a one-time critical or severe event that results in a threat to health or safety" but also "multiple occurrences" that pose such a threat. Id.

"[A]buse or neglect" is categorized by "severity" as a level one, two, or three "founded" disposition. See 22 VAC 40-700-20 (formerly VR 615-45-1) (1992).[5] The regulations provide that the Department should make a "founded" disposition of abuse or neglect where "a review of the facts shows by a preponderance of the evidence that child abuse and/or neglect has occurred." 22 VAC 40-705-10 (2009). See generally Cumbo v. Dickenson Cty. Dep't. of Soc.

---

[4] The regulations at issue in this appeal have been variously repealed, reenacted, and amended since the relevant events occurred. This opinion applies the regulations in effect at the time of those events.

[5] This administrative provision was in effect at the time of the events at issue in this appeal. The provision was repealed effective July 1, 2017, at which time the definitions underwent minor amendments and were moved to 22 VAC 40-705-110(D). 33 Va. Reg. Regs. 2152 (May 15, 2017).

Servs., 62 Va. App. 124, 130, 742 S.E.2d 885, 888 (2013) (noting that the "preponderance of the evidence standard is an appropriate standard for an abuse and neglect proceeding" (quoting Wright v. Arlington Cty. Dep't of Soc. Servs., 9 Va. App. 411, 414, 388 S.E.2d 477, 479 (1990))). The regulations define a "preponderance of the evidence" as meaning that the evidence "as a whole shows that the facts are more probable and credible than not." 22 VAC 40-705-10[6]; see also Lamar Co., LLC v. Bd. of Zoning Appeals, 270 Va. 540, 546 n.5, 620 S.E.2d 753, 756 n.5 (2005) (defining a preponderance of the evidence). Level three neglect is the least serious of the classifications and "includes those injuries/conditions, *real or threatened*, that result in *minimal* harm to a child." 22 VAC 40-700-20 (emphasis added). Level two neglect "includes those injuries/conditions, *real or threatened*, that result in or were likely to have resulted in *moderate* harm to a child." Id. (emphasis added). Level one neglect includes such conditions "that result in or were likely to have resulted in *serious* harm to a child." Id. (emphasis added).

"[T]he statutory definitions of an abused or neglected child do not require proof" that the child experienced "actual harm or impairment." Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1183, 409 S.E.2d 16, 19 (1991). This is entirely logical because the Commonwealth's policy of "protect[ing] abused children" and "prevent[ing] further abuse . . . would be meaningless if a child must suffer an actual injury from the behavior of his or her parent before receiving the Commonwealth's protection. Neither the statute nor the [Department's related procedures] impose such trauma upon a child." Jackson v. W., 14 Va. App. 391, 402, 419 S.E.2d 385, 391 (1992).

It is clear from the record in this case, viewed in light of the relevant statutes and regulations, that substantial evidence supports the hearing officer's finding that the appellant's

---

[6] Effective July 1, 2017, after the relevant time period for this case, the definition of "[p]reponderance of evidence" was amended to "just enough evidence to make it more likely than not that the asserted facts are true." 33 Va. Reg. Regs. at 2155.

neglect surrounding the conditions in the family home exposed I.M. to "threatened" injuries or conditions "result[ing] in" at least minimal harm. See 22 VAC 40-700-20. Social worker Grant described the home in which I.M. was residing with his parents, four dogs, and six cats as a "hoarder's home." The residence reeked of urine and feces. A puddle of dog urine was visible near a "doggie pee pad" in the kitchen, and a similar pad was in a pot on the stove amidst other dirty pots. Feces was seen in various locations in the house, and there were bugs in both the kitchen and living room. Items were piled on the horizontal surfaces in the kitchen where two full bags of garbage were also left. The refrigerator reeked of rotten food.

The house was so cluttered that it was difficult for the social worker to enter through the front door and to move through the house. Items on surfaces reachable by the child included glass, cleaning supplies, and broken items. The bathrooms were extremely dirty, and the toilets were caked with a black substance that was either feces or cat hair. The appellant admitted that these conditions had existed for about three months prior to the social workers' visit on July 29, 2015. See 22 VAC 40-705-30(B) (providing that neglect may be based on "multiple occurrences" that "result[] in a threat to health or safety").

Additional evidence established that these conditions were likely to be particularly problematic with regard to the appellant's four-year-old son who had ADHD. The child had been having temper tantrums that included displays of "very violent" behavior several times each week since he was fifteen months old. He routinely threw things at his parents and the family's dogs, and he broke items like mirrors and mugs. I.M.'s access to dangerous items, such as glass, cleaning supplies, and "broken items," in the home increased the risk that he could harm himself during one of his regular violent outbursts. Further, the severely cluttered conditions in the home, including the collection of cast iron and stacks of other items four to five feet high, placed I.M. at risk of tripping on these items or toppling an object that could harm him either during one

of his temper tantrums or simply while behaving as any energetic child his age might. Finally, based on the testimony of the pediatrician, Dr. Farber, the very unsanitary conditions in the home increased the risk of subjecting I.M. to infections and other illnesses. This record clearly provides substantial evidence of conditions "threaten[ing]" injuries that result in *at least* "minimal harm to [the] child." See 22 VAC 40-700-20.

The appellant relies on the Department's "intake tool," an internal worksheet designed to assist social workers in assessing a situation for abuse or neglect, for the proposition that his home environment did not endanger his son's health or safety within the meaning of 22 VAC 40-705-30. This reliance is misplaced.

The tool, in relevant part, defines neglect as the provision of "[i]nadequate [b]asic [c]are" related to "shelter" or "hygiene" and refers to conditions in the "[c]hild's home environment, *including* . . . unsanitary household conditions," that are "hazardous and *could* lead to injury or illness of the child if not resolved." (Emphasis added). By stating that the conditions "includ[e]" certain listed items, the worksheet makes clear that it does not purport to set out an exhaustive list of qualifying items. See, e.g., Including, Ballentine's Law Dictionary (2010) (defining "including" as meaning "inclusive of" and providing a "term of enlargement rather than limitation"); Include, Webster's Third New International Dictionary (2002) (defining "include" as "to place, list, or rate as a part or component of a whole or of a larger group, class, or aggregate"). The tool also provides the following list of circumstances that may establish that "the child's physical living conditions are hazardous and immediately threatening" depending on "the child's age and developmental status," including but not limited to: "[s]ubstances or objects accessible to the child that may endanger the health"; "[e]xcessive garbage or rotted or spoiled food that threatens health"; and "[e]vidence of human or animal waste throughout living quarters." The circumstances set out in the tool, as well as additional circumstances not

specifically listed, entirely support the hearing officer's findings and the circuit court's affirmance of the founded level three determination.

## C. Use of the Applicable Legal Standard

The appellant contends that the hearing officer incorrectly "adopt[ed] . . . [a] 'totality of the circumstances' standard" and considered the social worker's "personal biases and preferences" in making the finding of neglect. He argues that the circuit court's act of upholding the finding made under such a standard constitutes an error of law. The appellant suggests that the hearing officer "was required to examine each alleged environmental hazard presented" and to determine whether that hazard alone met the requisite standard of proving that he "failed to 'provide protection from the weather and observable environmental hazards, which have the potential for injury or illness.'"[7]

We hold that the applicable law and simple logic refute the appellant's claim. The regulations provide that neglect may be based on "multiple occurrences." 22 VAC 40-705-30(B). Consistent with the regulations, the Department's intake tool lists various specific examples of hazards in the home, but it does not purport to list all possible hazards, nor does it provide that the Department may not consider the impact of hazards present in combination. In fact, it suggests just the opposite based on the form's language "include, but are not limited to" with regard to examples for consideration. Further, the appellant's citation to the definition of physical neglect based on inadequate shelter contained in the Department's manual supports the Department's interpretation because it refers in the plural to a "[f]ailure to provide protection

---

[7] We note that the appellant cites nothing to support his assertion that each hazard must be considered in a vacuum in determining whether a charge of physical neglect based on inadequate shelter is founded. See generally Oley v. Branch, 63 Va. App. 681, 701, 762 S.E.2d 790, 799 (2014) ("If the [appellant] believed that the [hearing officer or] circuit court erred, it was [his] duty to present that error to [the reviewing court] with legal authority to support [his] contention." (quoting Fadness v. Fadness, 52 Va. App. 833, 851, 667 S.E.2d 857, 866 (2008))).

from . . . observable environmental *hazards*." Va. Dep't of Soc. Servs., <u>Child and Family Services Manual</u>, Pt. C, Child Protective Services, § 2.4.2.4 (July 2015 ed.) (emphasis added).[8] As long as each environmental hazard contributes to the risk from which the parent was responsible for protecting the child, the fact that any one of the hazards by itself might not meet the requisite standard does not mean that the Department has failed to prove neglect. <u>Cf.</u> <u>Wood v. Commonwealth</u>, 57 Va. App. 286, 298-99, 701 S.E.2d 810, 816 (2010) (rejecting a mother's claim that she was not guilty of felony child neglect where she drove while intoxicated but did so only slowly in a parking lot without committing any traffic violations because her "argument ignore[d] *the totality of the circumstances*" (emphasis added)).

The circuit court reviewed the record and determined that the hearing officer's analysis of the evidence was consistent with the law. The court considered the Department's intake tool introduced by the appellant and cited specific examples of hazardous living conditions that appeared in the record and fell within the categories listed in the tool. It determined that the hearing officer's findings of fact were wholly supported by substantial evidence and that she did not exceed the scope of her authority. We agree with the circuit court. Accordingly, we hold that the court did not err in rejecting the appellant's claim that the administrative hearing officer acted improperly by considering evidence of the environmental hazards in the aggregate.

---

[8] While a Department manual may be instructive, our analysis is guided by the applicable regulations and other law. <u>See</u> <u>Avante at Roanoke v. Finnerty</u>, 56 Va. App. 190, 202, 692 S.E.2d 277, 283 (2010) (holding that the Department of Medical Assistance Services "Nursing Home Manual, like the Medicare Provider Reimbursement Manual, 'does not have the binding effect of law or regulation,'" so if the manual can be read as contrary to the court's construction of regulations, its provisions "have no legal effect" (quoting <u>Fralin v. Kozlowski</u>, 18 Va. App. 697, 699 n.2, 447 S.E.2d 238, 240 n.2 (1994))). Nevertheless, here, the portions of the manual challenged by the appellant are consistent with our interpretation of the relevant regulations.

D. Arbitrariness of the Department's Decision

The appellant contends that the hearing officer's founded level three determination was arbitrary in light of the fact that his wife received a founded level two determination, one greater than his own, for conditions existing in the same home. The appellant fails to provide any legal basis for this assignment of error, in which he suggests that he is somehow entitled to relief because his wife ultimately received a harsher determination than he did.[9]

The appellant, on brief in this Court, cites no law supporting his claim that the decision was somehow "arbitrary" on the facts of this case, in part because his wife received a higher level finding of neglect. This Court has repeatedly made clear that "undeveloped arguments 'do not merit appellate consideration.'" Sfreddo v. Sfreddo, 59 Va. App. 471, 494, 720 S.E.2d 145, 157 (2012) (quoting Reid v. Commonwealth, 57 Va. App. 42, 48, 698 S.E.2d 269, 271 (2008)). The appellant's failure to develop his contention and provide regulatory or other legal authority to support his claim is significant. This procedural defect precludes consideration of the assignment of error on the merits. Consequently, the appellant has waived this claim.[10] See

---

[9] It is not at all clear how the disposition in the wife's case has any relevance to the appellant's case; nevertheless, we do not address the merits of the claim because appellate courts decide cases on the "best and narrowest" ground. See Cumbo, 62 Va. App. at 127 n.2, 742 S.E.2d at 886 n.2 (quoting Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) (*en banc*)).

[10] Further, the record, which was before the circuit court in its appellate capacity and is now before this Court, fails to affirmatively establish the outcome of the wife's hearing. Although the appellant's counsel referenced the proceedings against the wife and the judge referred to his "understand[ing]" that "the wife's findings were . . . different than the [appellant's] findings," the statements of counsel are not evidence. See Riverside Hosp., Inc. v. Johnson, 272 Va. 518, 525, 636 S.E.2d 416, 419 (2006); Smith v. Commonwealth, 16 Va. App. 630, 635, 432 S.E.2d 2, 6 (1993). It is the appellant's burden to establish the record on appeal and to provide this Court with sufficient evidence to make a reasoned ruling on each assignment of error. See Pettus v. Gottfried, 269 Va. 69, 81, 606 S.E.2d 819, 827 (2005). When, as here, "the appellant fails to do this, the judgment will be affirmed." See Patterson v. City of Richmond, 39 Va. App. 706, 717, 576 S.E.2d 759, 765 (2003) (quoting Smith, 16 Va. App. at 635, 432 S.E.2d at 6).

- 15 -

Rule 5A:20; LifeCare Med. Transps., Inc. v. Dep't of Med. Assistance Servs., 63 Va. App. 538, 558, 759 S.E.2d 35, 45 (2014).

## III.  CONCLUSION

We hold that substantial evidence in the record supports the appellant's founded disposition of level three neglect.  Additionally, the circuit court correctly concluded that the hearing officer did not rely upon an improper standard in reaching that determination.  Finally, the appellant's assignment of error alleging that the determination was arbitrary as compared to the appellant's wife's higher founded disposition of level two neglect is procedurally defaulted. Consequently, we affirm the decision of the circuit court.

<u>Affirmed.</u>