COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Overton and Bumgardner
Argued at Salem, Virginia


AVANTÉ AT LYNCHBURG, INC.
                                          OPINION BY
v.   Record No. 2457-97-3      JUDGE RUDOLPH BUMGARDNER, III
                                         AUGUST 11, 1998
JOSEPH M. TEEFEY, DIRECTOR, VIRGINIA
 DEPARTMENT OF MEDICAL ASSISTANCE SERVICES


            FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                      Richard S. Miller, Judge

            Jeannie A. Adams (Peter M. Mellette; Crews &
            Hancock, P.L.C., on briefs), for appellant.

            Brian E. Walther, Special Counsel (Mark L.
            Earley, Attorney General; Ashley L.
            Taylor, Jr., Deputy Attorney General;
            Siran S. Faulders, Senior Assistant Attorney
            General, on brief), for appellee.


     The Director of the Department of Medical Assistance

Services (DMAS) refused to pay Avanté at Lynchburg, Inc. for

specialized medical care provided to Patient H.[1]  Avanté appealed

the Director's refusal to the Circuit Court of the City of

Lynchburg.  The trial court affirmed the Director's decision,

finding substantial evidence to support the decision that

Patient H no longer required specialized care after

June 14, 1994.

     Patient H was admitted to Avanté's specialized care facility

following release from surgery at Danville Regional Medical

---

     [1]To protect patient confidential information, the patient in
question has been referred to as Patient H throughout this
litigation.

Center where a tracheostomy was performed. She was admitted with multiple diagnoses, the most relevant being Down's syndrome and obstructive sleep apnea, which is the inability to breathe effectively while asleep. She had a life expectancy of six months. When admitted on March 4, 1994, DMAS had approved her for specialized care at Avanté.

Pursuant to the DMAS Nursing Home Provider Manual, a nursing home will be reimbursed for providing specialized care when a patient requires weekly physician visits, twenty-four-hour-a-day nursing supervision, and a coordinated multi-disciplinary team approach to treatment. In addition, the individual must require one of three specific patient care categories: (1) rehabilitative services, (2) special equipment, or (3) special services, such as ostomy care or ongoing administration of medication or nutrition. Patient H met the basic specialized care criteria and needed specialized equipment. Her physician ordered that she be monitored with a pulse oximeter twenty-four hours a day. The pulse oximeter measures oxygen in the blood. If the level of saturation drops below a designated level, special actions would be taken to correct the deficiency.

On June 13-14, 1994, DMAS's Utilization Review Team conducted a review of the treatment provided Patient H by Avanté. Pamalia Hollenbach, a registered nurse, reviewed the patient's records and observed Patient H and her surroundings. Ms. Hollenbach reviewed her findings with the other members of the review team, which was composed of two additional registered

- 2 -

nurses. The team determined that Patient H no longer needed specialized care. After proceeding through the administrative appeal channels, the determination by the review team was approved by the Director. He ruled that ample evidence supported the findings (1) that the patient did not need specialized care because weekly nursing summaries never reflected that the patient experienced respiratory distress, (2) the patient's goal of not experiencing any seizure had been met, (3) the physician's progress notes did not reflect any respiratory distress and as of June 2, 1994 described the patient as stable, (4) the patient was observed without a pulse oximeter and without any staff observing her, and (5) no order had been written for defined monitoring by a pulse oximeter or directing the response if saturation levels reached a certain point. The Director found that the specialized care was not necessary based on the review of the records and the observation of Patient H made by the review team even though Avanté may have provided the specialized care. Avanté appealed the decree of the circuit court which upheld the Director's denial of reimbursement for specialized care from June 24 to December 1, 1994. After December 1, 1994, Avanté agrees the specialized care was no longer needed.

The standard of review of an agency's factual findings on appeal to a circuit court is limited to determining whether substantial evidence in the agency record supports its decision. See Code § 9-6.14:17; Turner v. Jackson, 14 Va. App. 423, 429-30, 417 S.E.2d 881, 886 (1992). On appeal, we do not disturb

- 3 -

factual findings if credible evidence supports them.  See James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).  The reviewing court can reject an agency decision "'only if, after considering the record as a whole, it determines that a reasonable mind would necessarily come to a different conclusion.'"  Virginia Real Estate Comm'n v. Bias, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983) (quoting B. Mezines, Administrative Law § 51.01 (1981)).

The Director accepted the opinion of the review team that the specialized treatment was unnecessary.  The team's opinion was based on a review of the patient's records and the observations made of the patient herself.  The team concluded the patient was stable.  While the record reveals the data collected from the records and the observations made, it does not reveal a proper basis for concluding that the data and observations support a finding of no medical necessity.  A team of registered nurses made the decision that the patient was stable and the specialized service was not needed.  The record contains no evidence that any physician interpreted the meaning of the nurses' objective findings.

At the administrative review a medical doctor did testify for DMAS.  However, he did not render a professional opinion that the data and observations led him to conclude that the services were no longer needed.  He was not offered as an expert on the needs of this patient but, rather, as an expert in medical administration and utilization review.  He testified as to

administrative procedures normally followed.  He stated that proper procedures called for doctor's orders to be written.  He concluded that if there was no written order, and in this case Ms. Hollenbach found no order for a pulse oximeter, then the device was not required.  The doctor did not opine that Patient H no longer needed a pulse oximeter.  He simply stated that if no written order for a service was found, nothing indicated that a doctor had decided it was needed.  The testimony states the obvious:  only a medical opinion of necessity justifies providing the service.

The opinion upon which the Director rested his decision was that made by the team of nurses.  However, no evidence showed that these particular nurses or registered nurses in general have the training, expertise, or experience necessary to render such a medical opinion.  To the contrary, the record suggests that a registered nurse would not normally make a decision to terminate treatment that was initiated by order of a physician.  Such a termination could be directed by a physician conditioned upon the nurse making certain findings, but no instructions specified the conditions under which a nurse would be authorized to stop the service.

Even though nothing in the record establishes the nurses' expertise to make the determination of medical necessity, that determination could be made if the objective standards for determining necessity were specified.  If that had been done, the objective facts could be compared to the medical standard to see

if they matched. The observations could be evaluated against an accepted medical gauge. However, no evidence established a standard by which a nurse could determine when the treatment prescribed for Patient H was no longer necessary.

The Director's decision was also based on the observations that the patient was neither being monitored by a pulse oximeter nor observed by a nurse. These observations do not lead to a conclusion that Patient H no longer required the special treatment of twenty-four-hour nursing supervision and continued monitoring with a pulse oximeter. The nurse's finding that the treatment was not provided at the time of her inspection does not dispense with the need for evidence from a qualified medical expert that the patient's condition no longer necessitated the treatment. Finding that Avanté did not provide a service they had contracted to provide would be clear reason not to reimburse them for rendering the service, but it does not establish that the service was not needed. The fact Patient H did not receive a medical service does not mean she did not need it.

In summary, the Director's decision was based on the patient's record that did not indicate that the special equipment had been ordered or that any bad episodes had occurred and, further, was based on the observations that the patient was not connected to the monitoring device. While this might allow a qualified expert to conclude that there was no medical necessity, only a medical expert is qualified to draw that conclusion. The evidence failed to establish a standard defining when the special

- 6 -

equipment would no longer be needed, and no qualified expert rendered an opinion that the need had passed. On the contrary, all those qualified to render a medical opinion, the doctors, stated the patient needed the treatment. Further, the trial record establishes that the medical equipment had been ordered, that it was furnished as ordered, and that the patient had not stabilized in the sense of no longer needing the treatment. All qualified expert evidence supported Avanté's position that specialized treatment was necessary. No medical evidence to the contrary was presented. The Director's decision was not based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988). This is not a case of conflicting medical opinions which would properly create a question of fact to be resolved by the Director. See Penley v. Island Creek Coal Co., 8 Va. App. 310, 318, 381 S.E.2d 231, 236 (1989). The Director's decision was not based on substantial evidence, and therefore we reverse the decision of the trial court and hold that Avanté was entitled to reimbursement for providing the specialized service to Patient H during the period claimed.

Reversed and remanded.