## CIRCUIT COURT OF FAIRFAX COUNTY

Winnie Zukor

v.

Commonwealth of Virginia,
Department of Social Services

May 1, 2000

Case No. (Chancery) 139865

BY JUDGE DENNIS J. SMITH

In January of 1994, the Fairfax County Department of Human Development (the Department) commenced an investigation of Winnie and Milton Zukor for alleged emotional and medical neglect of their daughter, Erin Zukor. See Va. Code Ann. § 63.1-248.6(D). At this time, Erin,[1] born April 21, 1978, suffered from anorexia nervosa and various other mental illnesses. See Letter from Tomas Jose Silber, M.D., George Washington University Medical Center Department of Pediatrics, to Laura Thomas, Investigating Social Worker 1 (June 1, 1994); see also Record of Proceedings in the Matter of Winnie Zukor at 481 (hereinafter Record). On May 18, 1994, Winnie Zukor was notified by the Department that on April 20, 1994, it had made a finding of "High Risk, Level One, Mental Neglect" of Erin by both parents. See Child Protective Services Investigation Record at 11 (hereinafter CPS Record); see also Record of Proceedings in the Matter of Winnie Zukor at 394 (hereinafter Record). The May 1994 finding was appealed and upheld at all levels of review,[2] with an Agency determination of "Founded Emotional Abuse, Level One" made in April 1995. See generally Letter Opinion of JoAnn Stevens, Fairfax Department of Human Development (April 21, 1995)

---

[1] The Zukors have two children; their eldest is a son Tevya (DOB October 18, 1976); their daughter Erin is less than two years Tevya's junior.

[2] See Record at 396, 619-623.

(hereinafter Department Letter Opinion); see also Record at 5-13. Winnie Zukor then filed this Petition for Review; the matter was argued and taken under advisement.

The Agency determination of Level One, Founded Emotional Abuse was based on the hostile relationship between Erin's parents, which caused her emotional harm, and the failure of Mr. and Mrs. Zukor to follow the recommended treatment options presented to them by medical professionals. See CPS Record at 11-12 (summary of findings); see also Record at 394-395. Specifically, the Agency made the following findings. The Zukors were non-communicative with each other, except in derogatory manners; they often communicated with each other through Erin. Further, Erin suffered from anorexia nervosa, was involved in vandalism, shoplifting, and other disciplinary issues, attempted suicide, had three psychiatric hospitalizations, and threatened to run away if institutionalized again. See *id.* Both of Erin's doctors, Dr. Silber and Dr. Sarnes, concluded that the relationship between her parents had a negative impact on her and found that the parents contributed to Erin's anorexia. See generally Department Letter Opinion at 5-6.

Ample evidence supports the conclusion that the home environment hindered, and maybe even prevented, Erin's healing. In December of 1993, Dr. Silber advised that Erin's home situation was untenable due to severe marital conflict between the parents and that she should be removed from the home. See CPS Statement at 2; see also Record at 403 and 477. Likewise, in January of 1994, Dr. Sarnes informed[3] Child Protective Services (CPS) that the marital conflict between the parents was the main source of Erin's emotional difficulties. See Child Protective Services Statement of Facts at 3 (hereinafter CPS Statement); see also Record at 404.

In response to their investigation and the medical conclusions, the Department presented three options to Mr. and Mrs. Zukor. Their options were (1) marital separation, or (2) voluntarily relinquishing custody of Erin, or (3) placing Erin in a private hospital with special eating disorder programs. See CPS Record at 8-9; see also Record at 391-392. The options presented to Ms. Zukor by the Department, however, were too drastic, and only the most serious circumstances should empower the Department to impose them upon the pain of being found a child abuser.

---

[3] Dr. Sarnes, a psychiatrist, counseled Erin on a weekly basis throughout 1992 and 1993. Dr. Sarnes reported telling Mr. and Mrs. Zukor in a joint meeting that Erin would only improve if one of the parents withdrew from the marital residence or if Erin was placed with an appropriate guardian. See Child Protective Services Statement of Facts at 3 (hereinafter CPS Statement); see also Record at 404.

"The standard of review of an agency's factual findings on appeal to a circuit court is limited to determining whether *substantial evidence* in the agency record supports its decision." *Avante at Lynchburg, Inc. v. Teefey*, 28 Va. App. 156, 160, 502 S.E.2d 708, 710 (1998) (emphasis added). Under the substantial evidence standard, an agency's factual findings should be rejected "only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion." See *Tidewater Psychiatric Inst. v. Buttery*, 8 Va. App. 380, 386, 382 S.E.2d 288, 291 (1989) (quoting *Virginia Real Estate Comm'n v. Bias*, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983)). "The phrase substantial evidence refers to such relevant evidence as a reasonable mind *might* accept as adequate to support a conclusion." *Bias*, 226 Va. at 269, 308 S.E.2d at 125 (punctuation and citation omitted). Additionally, a court must review the facts in the light most favorable to the Commissioner's actions. The Court *must* take into account the said actions under the presumptions of (1) official regularity, (2) the Commissioner's experience and specialized competence, and (3) the purposes of the basic law under which the Commissioner has acted. See *Bio-Medical Applications of Arlington, Inc. v. Kenley*, 4 Va. App. 414, 427, 358 S.E.2d 722, 729 (1987); see also Virginia Code Ann. § 9-6.14:17.

In this case, taking the options one at a time, the record establishes that the Zukors sought medical and psychological help for Erin as necessary, even going outside of their insurance coverage to secure additional medical help. See Letter from Pamela Parme, LCSW Department of Clinical Resources of Chestnut Lodge Hospital, to Milton Zukor (December 20, 1993); Letter from Debora Greco, Information Specialist at The Browns School, to Winnie Zukor (December 8, 1993). The private hospitalization recommended by Dr. Silber was in a facility that would cost over $200,000.00 per year, which went well beyond the financial means of the Zukors. See Record at 592 (Chestnut Lodge Hospital Schedule of Rates). Furthermore, the Zukors explored methods of funding this treatment but to no avail.

As for the required separation, the Department did not become involved with the family until mid-January 1994, and the record indicates that the first time the Department recommended separation as a means of preventing injury to Erin was February 2, 1994. See CPS Record at 6-8; see also Record at 389-391. Moreover, the record establishes that the Zukors discussed the suggested separation with the County attorney and their counsel on March 4, 1994; and, within a month of that meeting, the Zukors developed a plan to separate on or about April 15, 1994. See CPS Record at 8-9; see also Record at 391-392. Accordingly, the Zukors separated within two months after the Department's recommendation. See CPS Record at 8-9; see also Record at 391-392. This

period is not unreasonable considering that the Zukors were married for over 26 years at the time of the separation.[4]

Further, the record reveals that Mr. Zukor did in fact rent an apartment one week after the planned separation date; however, Mr. Zukor continued to spend evenings and mornings in the marital home. Mr. Zukor's continued presence in the home — despite separation — underscores the reality that whether the Zukors effected a separation, which satisfied the requirement of the doctor or the department, ultimate satisfaction of this option was not solely within Mrs. Zukor's power and/or control.

Lastly, the voluntary relinquishment of custody of Erin, as of the time of the finding the Zukors were effectuating a separation, was delayed beyond the scheduled date by Mr. Zukor's overseas business trip in early April. Nothing in the record indicates that the Department told the Zukors that if the separation was not effectuated by April 15, 1994, then, in the absence of a voluntary relinquishment, they would be found to be child abusers. A reasonable mind must necessarily conclude that under all of the circumstances of this case, Ms. Zukor was justified in relying upon the imminent separation as satisfying the mandates of the Department.

It was not the intent of the General Assembly that child abuse findings are to be made by the Department as punishment for not taking all actions suggested by the Department, in the precise time frame suggested by the Department, regardless of how oppressive or how personally invasive the Department's suggestions might be. Findings of child abuse are to be made by the Department to allow remedial action to protect children and to create and maintain data to facilitate the identification of and protection against child abusers. A suggested remedy, which requires dissolution of the family unit, should not be taken unless other less drastic alternatives are not available. Cf. Va. Code Ann. § 16.1-227(3);[5] see also Va. Code Ann. §§ 16.1-252,[6] 16.1-253.[7]

---

[4] Milton and Winnie Zukor married on June 30, 1967, and divorced November 17, 1997.

[5] "To separate a child from such child's parents, guardian, legal custodian or other person standing in loco parentis only when the child's welfare is endangered or it is in the interest of public safety and then only after consideration of alternatives to out-of-home placement which afford effective protection to the child, his family, and the community." § 16.1-227(3).

[6] Section 16.1-252(A) of the Code states, "A preliminary removal order in cases in which a child is alleged to have been abused or neglected may be issued by the court after a hearing wherein the court finds that reasonable efforts have been made to prevent removal of the child from his home."

[7] Section 16.1-253 provides for the issuance of preliminary protective orders.

In this case, the Agency had several other options available to protect this child. For example, had the agency determined that Erin was being subjected to imminent harm (irremediable injury would be likely to result if she were left in the custody of her parents), the Department could have taken action to obtain a preliminary protective order requiring the parents to observe reasonable conditions of behavior under § 16.1-253 of the Virginia Code,[8] or removed the child who is being harmed by actions or inactions of a parent or both parents in accordance with § 16.1-252 of the Virginia Code.

Thus, after careful review of the record, the Court cannot find that there is substantial evidence to support a finding, by clear and convincing evidence, that Ms. Zukor abused Erin.

---

[8] This has not been considered as to the weight of the evidence but as illuminating on the statutory scheme in place to allow the Department to address situations such as these.