COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:    Judges Huff, Ortiz and Lorish
Argued by videoconference

REBECCA BENEDICT-MILLER

v.        Record No. 0323-21-1

VIRGINIA DEPARTMENT
 OF SOCIAL SERVICES

OPINION BY
JUDGE LISA M. LORISH
NOVEMBER 23, 2021

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
James C. Lewis, Judge

Arnold H. Abrons (Abrons, Chiusano & Sceviour, PLLC, on brief),
for appellant.

Ellen R. Fulmer-Malenke, Assistant Attorney General (Mark R.
Herring, Attorney General; Erin B. Ashwell, Chief Deputy Attorney
General; Sylvia C. Jones, Deputy Attorney General; Kim F. Piner,
Senior Assistant Attorney General, on brief), for appellee.


When a child is alleged to have been abused or neglected by a teacher, or certain other

school employees, there are increased procedural requirements that govern the ensuing

investigation as well as a heightened substantive standard of what counts as abuse or neglect.

The Virginia Department of Social Services ("appellee") determined that former teacher Rebecca

Benedict-Miller ("appellant") committed level three physical abuse on one of her students. The

questions here are whether appellee procedurally complied with applicable statutes and its own

internal guidelines in making this determination, and whether the evidence was sufficient to

support a finding of willful misconduct.

BACKGROUND[1]

The Virginia Beach Department of Social Services ("Virginia Beach DSS") received a complaint stating that appellant, a public school teacher, had dragged her student, J.H., down a school hallway into an office. J.H. was nine and in a special education class, with diagnoses of autism, ADHD, and an intellectual disability. During its investigation, Virginia Beach DSS reviewed witness statements and available surveillance video recordings, and conducted interviews of J.H., appellant, and all available witnesses. The investigation yielded the following evidence.

In March 2019, while in appellant's classroom, J.H. kicked another child in the stomach. Appellant struggled to remove J.H. from the classroom and bring her to the hallway, where appellant called out for assistance until another teacher came to supervise her classroom. Appellant was then in the hallway with J.H. alone. Appellant tried to lead J.H. to the principal's office, where there is a sensory room designed for de-escalation of conflict. Surveillance footage shows that, rather than walking with appellant, J.H. picked up her feet, requiring appellant to carry her at certain points. J.H. ultimately went limp, raising her arms, and falling to the floor. During this difficult episode, another teacher walked by appellant and asked if appellant needed help, but appellant declined. While on the floor, J.H. kicked at appellant, who grabbed J.H.'s foot to stop her from kicking, and then dragged J.H. by the foot down the hallway to the sensory room. The other teacher followed them down the hall, and a third school employee opened the door to the sensory room. Two witnesses observed J.H. trying to put her hands and arms under herself while she was being dragged, and several witnesses reported that appellant seemed upset and "frazzled." Once J.H. was in the room and under the supervision of the school's assistant

_____

[1] We review "the facts in the light most favorable to sustaining the [agency's] action." Jones v. West, 46 Va. App. 309, 322 (2005) (quoting Atkinson v. Va. Alcohol Beverage Control Comm'n, 1 Va. App. 172, 176 (1985)).

principal, appellant went back to her classroom. Later, J.H. escaped from the room twice and kicked a different student in the stomach.

J.H. sustained a nickel-sized rug burn to her back, confirmed by photographs. She told her therapist and others that the injury occurred when she was dragged on the carpet in the principal's office. J.H. also reported hitting her head during the episode with appellant, and complained of headaches, occipital tenderness, sensitiveness to light, and swelling on the back of her head. During the investigation, appellant reported her understanding that dragging a child is not an acceptable method of restraining a child, but that she believed the action was necessary to keep her other students safe. She stated that she knew she could not pull J.H. by the arms as that could hurt J.H.'s joints. Appellant admitted the policy for such an occurrence is to stay calm and call for help.

Virginia Beach DSS determined that appellant committed Level 2 Physical Abuse for "injuries/conditions . . . that result or were likely to have resulted in moderate harm to a child." Virginia Beach DSS reported the result of its investigation to appellant in a two-page letter. This letter stated that the investigation was conducted in a manner consistent with relevant statutory authority and concluded:

> Dragging a child is not a form of discipline that is authorized to be used by a Virginia Beach City School Employee. Appropriate behavioral management techniques should be used with the students. Willful misconduct occurred when Ms. Benedict-Miller did not reach out for assistance from her fellow peers or use appropriate behavioral management techniques, when escorting [J.H.] to the office. Surveillance footage shows a staff member that walked by that could have been used as assistance to safely escort [J.H.] or to request for further assistance. When [appellant] was reportedly approached for help, she declined.

Appellant appealed the decision through a local appeal conference. After this conference, Virginia Beach DSS sent appellant a letter detailing the facts determined through its investigation. The letter also notes that appellant's counsel argued that Virginia Beach DSS had

- 3 -

not complied with internal policy standards or Code § 63.2-1511 because the agency's flow chart and specified inquiry process were not reflected in the agency's record. Virginia Beach DSS concluded that it had complied with relevant policies and that the case narrative in the record (more than thirty pages) as well as the dispositional summary reflected consideration of the correct criteria.

Appellant next sought full agency review. Appellee held a hearing where appellant was present, with counsel. The hearing officer considered the evidence already in the record, but both Virginia Beach DSS and appellant also had a chance to present new evidence. Additional photographic evidence was submitted into the record, as well as testimony from appellant, another teacher at the school who had interacted with J.H. later in the day, and the Virginia Beach DSS investigator responsible for the investigation. In a forty-page written decision, appellee's hearing officer detailed all the evidence, the applicable statutory and regulatory provisions, and its analysis for why the disposition was reduced to "Founded, Physical Abuse (Cuts, Bruises, Welts, Abrasions) Level Three." As for the willful misconduct finding, the decision explained:

> Appellant was conscious of her conduct. There is no evidence or assertion to the contrary. She was aware that this was a situation in which the child could be injured. She testified that she knew she could not grab the child by her arms, because that would hurt her joints. Yet, she chose to drag a struggling child by the foot, with the child's back and head to the ground for the entirety of the time she was moving the child in this manner. The Appellant did not exercise other options, such as remaining with the child in the hallway, instead of dragging her to the sensory room. She refused help, and continued with her actions.

Finally, appellant appealed to the Virginia Beach Circuit Court, which affirmed the decision of the agency. This appeal follows.

ANALYSIS

I. Standard of review

The Administrative Process Act (APA) governs our review of a founded disposition of child abuse. Jones v. West, 46 Va. App. 309, 322 (2005). The "burden is upon the appealing party to demonstrate error." Id. (quoting Carter v. Gordon, 28 Va. App. 133, 141 (1998)). The APA allows appellate review for four types of legal issues:

> (i) accordance with constitutional right, power, privilege, or immunity, (ii) compliance with statutory authority, jurisdiction limitations, or right as provided in the basic laws as to subject matter, the stated objectives for which regulations may be made, and the factual showing respecting violations or entitlement in connection with case decisions, (iii) observance of required procedure where any failure therein is not mere harmless error, and (iv) the substantiality of the evidentiary support for findings of fact.

Code § 2.2-4027.

Issues of statutory construction are reviewed *de novo*. Moore v. Brown, 63 Va. App. 375, 380 (2014); Code § 2.2-4027. At the same time, we accord great deference to an agency's interpretation of its own regulations. Moore, 63 Va. App. at 380.

As for issues of fact, we are limited to the facts contained in the agency's record, which we view in a light most favorable to the agency. Carter, 28 Va. App. at 141. "On appeal, we do not disturb factual findings if credible evidence supports them." Avante at Lynchburg, Inc. v. Teefey, 28 Va. App. 156, 160 (1998). Thus, we may only reject a factual finding "if, after considering the record as a whole, [we] determine[] that a reasonable mind would necessarily come to a different conclusion." Va. Real Estate Comm'n v. Bias, 226 Va. 264, 269 (1983) (quoting B. Mezines, Administrative Law § 51.01 (1981)). Review of an agency's factual findings "is limited to determining whether substantial evidence in the agency record supports its decision." Jones, 46 Va. App. at 323 (quoting Avante at Lynchburg, Inc., 28 Va. App. at 160).

- 5 -

II. Overview of relevant statutes and agency guidance

The Virginia legislature entrusts local departments of appellee with the task of "receiving and responding to complaints and reports" of child abuse and neglect. Code § 63.2-1503. An abused or neglected child is one "[w]hose parents or other person responsible for his care creates or inflicts . . . a physical or mental injury by other than accidental means." Code § 63.2-100(1). A disposition of physical abuse is founded when a review of the facts gathered during an investigation shows by a preponderance of the evidence that child abuse or neglect has occurred. 22 VAC 40-705-10.

The local department is governed by statutory obligations and internal agency policy. In every case, the local department must collect information necessary to its investigation and transmit a report to both appellee and the subject of the investigation detailing its determination of whether a report of abuse or neglect is founded or unfounded. Code § 63.2-1505. When a school employee is the subject of the complaint or report, there are heightened statutory requirements—both for the substantive standard for finding that abuse occurred but also for the procedural requirements—to ensure a thorough investigation. Code §§ 63.2-1511, -1516.1.

Heightened standards apply to physical abuse allegations in the school setting for good reason. Teachers, particularly those in public schools, perform an incredibly difficult and essential job. On top of teaching, they must maintain order in a classroom and care for students who may experience a full complement of challenges. The statutory framework prohibits corporal punishment in the school setting but recognizes, for example, that a teacher may need to use reasonable force against a student to protect other students, or to prevent the student from self-harm. Code § 63.2-1511. Even if a teacher's actions were not reasonable, the statute requires another step. The local department must determine whether the actions "were within such employee's scope of employment and were taken in good faith in the course of supervision, care, or discipline of

students." Code § 63.2-1511(C). If so, a determination of abuse or neglect is founded only if "such acts or omissions constituted gross negligence or willful misconduct." Id.

Relevant here, the enhanced procedural requirements mandate that "[w]ritten notification of the findings" be submitted to the alleged abuser and that they "shall include a summary of the investigation and an explanation of how the information gathered supports the disposition." Code § 63.2-1516.1(A)(4). Appellee's Child and Family Services Manual is "intended as a guideline" for investigations "involving school personnel in order to review the requirements of § 63.2-1511 of the Code of Virginia" and affirms that "allegations against public school employees have additional considerations which go beyond the normal procedures and requirements." This manual also states that "[d]ispositional documentation must address the unique requirements of § 63.2-1511 of the Code of Virginia related to public school employment, reasonable and necessary force, and gross negligence or willful misconduct." Finally, the manual provides a flow chart with corresponding discussion questions to address the unique requirements of the statute.

Code § 63.2-1526 sets out the appeal process. After a finding of abuse, the alleged abuser may request reconsideration through an informal conference where the accused is able to "informally present testimony of witnesses, documents, factual data, arguments or other submissions of proof." Code § 63.2-1526. Following this review, the accused may appeal to the Commissioner of the agency. Id. This decision is then subject to judicial review under Code § 2.2-4026 of the APA.

Finally, another section of the APA is important here. Applicable to every formal administrative hearing, "[a]ll decisions or recommended decisions shall be served upon the parties, become a part of the record, and briefly state or recommend the findings, conclusions, reasons, or basis thereof upon the evidence presented by the record and relevant to the basic law under which

the agency is operating together with the appropriate order, license, grant of benefits, sanction, relief, or denial thereof." Code § 2.2-4020.

### III. A detailed explanation of an agency's reasoning is necessary for notice and judicial review, and appellee provided a sufficiently detailed analysis.

Agencies must explain their decisions with sufficient clarity to provide the accused with an adequate understanding of the agency's determination and to allow for meaningful appellate review. "It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive." SEC v. Chenery Corp., 332 U.S. 194, 196-97 (1947) (quoted with approval in Va. Ret. Sys. v. Cirillo, 54 Va. App. 193, 203 (2009)). An agency's decision must, at a minimum, "briefly state . . . the findings, conclusions, reasons, or basis thereof upon the evidence presented by the record and relevant to the basic law." Code § 2.2-4020; see also Goodyear Tire & Rubber Co. v. Pierce, 5 Va. App. 374, 384 (1987) (holding, under judicial review provisions of the Workers' Compensation Act, that "[i]n order to sufficiently scrutinize any award, we must have an adequate 'statement of the findings of fact, rulings of law and other matters pertinent to the questions at issue' for a proper review" (quoting former Code § 65.1-97)). A failure to make findings of fact to support such a decision "is not harmless error." Harrison v. Ocean View Fishing Pier, LLC, 50 Va. App. 556, 575 (2007) (remanding for agency to state factual findings, conclusions, reasons, or basis under Code § 2.2-4020). But whether an agency complies with all required procedures is subject to harmless error review. Code § 2.2-4027. Appellant contends here that appellee failed to comply with the governing statute, as well as its own internal procedures from the Child and Family Services Manual, by not documenting that it had considered all the relevant factors from Code § 63.2-1511.

Starting with the local department's investigation and written disposition, we will assume without deciding that the written disposition insufficiently documented the willful misconduct

finding under the agency's own guidelines and that it failed to meet the statutory requirement to "include a summary of the investigation and an explanation of how the information gathered supports the disposition." Code § 63.2-1516.1(A)(4).[2] We must then consider whether the error was harmless. Code § 2.2-4027 (allowing judicial review of agency action for errors of law such as "observance of required procedure where any failure therein is not mere harmless error"); Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242 (1988) (concluding procedural error was harmless).

Any failure to sufficiently document the decision at the local level here was made harmless by the thorough, *de novo*, appeal to the agency. Christian v. Va. Dep't of Soc. Servs., 45 Va. App. 310, 312 (2005) ("Through the use of administrative hearing officers, VDSS reviews *de novo* any contested determination by a local department."). Indeed, appellee held a hearing where appellant, represented by counsel, could (and did) present new evidence. After this hearing, appellee documented, in a long report, the local department's investigative record (ten pages), the evidence and argument presented at the hearing (twenty-three pages), the applicable statutory and regulatory provisions (four pages), and its analysis for why appellant's actions were unreasonable (four pages). In providing its analysis, appellee specifically walked through the different statutory obligations that apply in the public school setting, including the particular requirements of Code § 63.2-1551(A), the heightened standards of "gross negligence" or "willful misconduct," and the factual basis supporting the finding that appellant's actions constituted willful misconduct.[3]

---

[2] In making this assumption, we note that the agency itself found that the local department's "dispositional assessment should have included a more detailed analysis of the determination of willful misconduct."

[3] We reject appellant's unfounded contention that either the statute itself, Code § 63.2-1511, or internal agency procedures, required rote recitation of each of the five possible statutory exceptions and why each did not apply as part of its written disposition.

For these reasons, the agency's decision sufficiently stated "the findings, conclusions, reasons, or basis thereof upon the evidence presented by the record and relevant to the basic law under which the agency is operating" as required by Code § 2.2-4020. It also provided enough information for this Court to review the agency's finding of willful misconduct, which we take up below. Any failure by the local department to properly document its disposition was therefore harmless.[4]

This is not to say that every procedural defect at the local department level will always be harmless if the final agency report is sufficiently thorough. One can imagine errors not presented here, such as the failure to advise the alleged abuser of the right to be represented by counsel, or of the rights to appeal, that may require a different result. But the rule requiring sufficient written notification of a decision is meant to ensure adequate future review and provide appellants with an actual understanding of the case against them. Here, the full report following the agency's hearing satisfies these concerns.

Appellant relies on cases in which this Court found that procedural errors in a final agency report were not harmless. In an unpublished decision, we reversed a finding by the Virginia Board of Accountancy that an appellant had violated auditing standards because its written disposition failed to specify which standard(s) (in more than 600-pages of text) had been violated and referenced no facts to support its conclusion. Kim v. Va. Bd. of Accountancy, No. 0288-16-4, slip op. at 9 (Va. Ct. App. Nov. 15, 2016). For this reason, the appellant was unable to "intelligently marshal facts in the agency record supportive of his position" on appeal. Id. at 10 (quoting Cirillo, 54 Va. App. at 203). The same is true for our decision to reverse the

---

[4] This conclusion is bolstered by Code § 63.2-1516.1(C), which provides that "[f]ailure to comply with investigation procedures does not preclude a finding of abuse or neglect if such a finding is warranted by the facts." Contrary to appellant's suggestion otherwise, this statute applies to investigations of abuse or neglect in the school setting. See Code § 63.2-1511(A) ("[T]he complaint shall be investigated in accordance with . . . § 63.2-1516.1.").

Virginia Retirement System's denial of disability benefits to an appellant without explaining the rationale for the decision.  See Cirillo, 54 Va. App. at 203.  The violation of the informal administrative decision requirements applicable in that case "depriv[ed] the trial court of the rationale of the administrative decision [and] impeded that court in application of the substantive evidence rule in reviewing that decision."  Id.  Unlike this case, Kim and Cirillo both involved an agency's final decision, not a local determination later superseded by an agency's *de novo* final determination.  Appellant has not shown that the procedural violations she alleges caused her to be unable to intelligently marshal facts in the agency record supportive of her position on appeal.

IV.  The record supports the willful misconduct determination.

We then turn to whether there was substantial evidence in the agency record to support the agency's determination of willful misconduct in this case.  Code § 2.2-4027.  To begin with, the question of whether a school employee's actions or omissions constitute willful misconduct (or gross negligence) is the third and final step under Code § 63.2-1511(C).[5]  The first step is determining whether the employee's actions were reasonable and within the list of statutory exceptions.  Code § 63.2-1511(A).  The second is to assess whether the actions or omissions were within the scope of the employee's employment and were taken in good faith in the course of supervision, care, or discipline of students.  Id.  Appellant challenges only whether substantial evidence supports the willful misconduct finding.  "'[S]ubstantial evidence' refers to 'such relevant evidence as a reasonable mind *might* accept as adequate to support a conclusion.'"  Mulvey

---

[5] Appellee determined that appellant's actions constituted willful misconduct, without reference to gross negligence.  Since our task is to review whether substantial evidence supports the agency's determination, we do not consider whether the evidence would have also supported a finding of gross negligence.  See First Va. Bank v. Commonwealth, 213 Va. 349, 351 (1972) ("[W]here the Commission has reached the right result for the wrong reason, its decision, unlike that of a trial court, will not be permitted to stand.").

v. Jones, 41 Va. App. 600, 603 (2003) (quoting Bias, 226 Va. at 269).  In undertaking this review, we "view the evidence in the light most favorable to the agency."  Id. at 602.

Willful misconduct exists where

> [the actor] was conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result.

Thomas v. Snow, 162 Va. 654, 660 (1934) (citation omitted).  "Ill will is not a necessary element" of willful misconduct.  Infant C. v. Boy Scouts of Am., 239 Va. 572, 581 (1990); see also Curtis v. Highfill, 298 Va. 499, 506 (2020).  For this reason, a person who commits a tort may be guilty of willful misconduct when he "intends his act, but not the resulting harm."  Infant C., 239 Va. at 582.  If the actor "realizes or, from facts which he knows, should realize that there is a strong probability that harm may result" from his actions, the actor may be found to have acted in a willful and wanton or reckless manner "even though he hopes or even expects that his conduct will prove harmless."  Id. at 582-83 (quoting Restatement (Second) of Torts § 500 cmt. f (Am. L. Inst. 1965)).

Appellee presented substantial evidence that would allow a reasonable mind to conclude that appellant physically abused J.H. when she dragged J.H. down the hallway and into a carpeted office, resulting in a rug burn.  Appellant faced a challenging classroom disturbance.  J.H. harmed another student in appellant's classroom, and we do not fault appellant for removing J.H. from the classroom to ensure the safety of the other students present.  That said, after J.H. was in the hallway outside the classroom, and appellant had successfully summoned another teacher to replace her in the classroom, appellee could have reasonably concluded that the other students were no longer at risk.  J.H. was on her back, not standing, and not in a position to go back to the classroom.  The evidence demonstrated that while J.H. was kicking at appellant, nothing prevented appellant from stepping away to avoid being kicked.  The record furnished an ample basis for appellee to conclude

that appellant's actions were unnecessary, no matter the possible ongoing risks of misbehavior by J.H.

Instead, appellant continued to try to resolve the situation herself, with several witnesses reporting that she seemed upset and "frazzled." Appellant refused the assistance offered by another teacher walking by, and at no point did she stop and ask for help from anyone else. Appellant admitted that dragging a child was not an appropriate management technique and that the policy for a situation like this was to stay calm and call for help. Appellant also knew she could not grab J.H. by the arms because that would hurt the child's joints, and common sense suggests grabbing a child by the legs was also likely to result in injury. The nature and circumstances of appellant's actions support appellee's conclusion that she was conscious of her conduct and aware of the strong probability that J.H. would be injured in some way. Finally, J.H. sustained a minor injury to her back from appellant's actions. While appellant contests these claims, substantial evidence supports that the injury (consistent with a rug burn) appeared after the dragging, and J.H. reported to multiple people that the dragging caused the injury. For these reasons, there was substantial evidence of willful misconduct.

## CONCLUSION

We hold that appellee complied with the relevant statutes, and the Administrative Process Act, in determining appellant's founded disposition of physical abuse. Additionally, substantial evidence in the record supports the same. For these reasons, we affirm the decision of the circuit court.

Affirmed.