COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Chaney and Senior Judge Haley

KATHERINE VALENTINE

v.          Record No. 0605-21-2

MEMORANDUM OPINION*
PER CURIAM
DECEMBER 7, 2021

COMMISSIONER OF THE VIRGINIA
  DEPARTMENT OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Catherine C. Hammond, Judge Designate

(Mehagen D. McRae; Fayez Goriup McRae PLLC, on brief), for
appellant.

(Mark R. Herring, Attorney General; Sylvia C. Jones, Deputy
Attorney General; Kim F. Piner, Senior Assistant Attorney General
and Section Chief; Susan P. D. Whyte, Assistant Attorney General,
on brief), for appellee.

Katherine Valentine (hereinafter "appellant") appeals a circuit court order affirming the

Virginia Department of Social Services' ("the Department") disposition of "Founded-Physical

Abuse-Bone Fractures-Level Two." Appellant argues that the evidence was insufficient for the

circuit court to affirm the Department's decision. Upon reviewing the record and briefs of the

parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the circuit

court's judgment. See Rule 5A:27.

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

On appeal, we view the evidence in the light most favorable to the Department, the party prevailing below.[1] Chabolla v. Virginia Dep't of Soc. Servs., 55 Va. App. 531, 534 (2010). Furthermore, we "limit our review of issues of fact to the agency record." Mulvey v. Jones, 41 Va. App. 600, 602 (2003).

On the evening of Saturday, February 11, 2017, appellant babysat five-month-old T.L. and his two-year-old brother, P.L. Appellant had not previously cared for the children; their mother, Elizabeth Corbin, had obtained appellant's name from a friend. Appellant arrived at Corbin's home around 6:30 p.m., and Corbin gave her a tour of the house. Before appellant's arrival, T.L. was behaving normally. Corbin had bathed and dressed both children and remained in the house for approximately an hour so that everyone was "comfortable." Corbin and her husband, Adam Letcher, left the house at approximately 7:30 p.m. and walked to a house two blocks away.

Approximately fifteen minutes later, appellant texted Corbin that P.L. was complaining of a stomachache. Corbin suggested that appellant offer him ginger ale and half of a vitamin, but when appellant texted Corbin that P.L. felt "hot," Corbin returned home. Upon Corbin's return, she found T.L. in his swing and P.L. on the couch with appellant. Corbin took P.L. upstairs and left T.L. with appellant. While she was upstairs, Corbin heard T.L. "screeching and screaming" loudly, prompting her to run downstairs. T.L. was in the swing crying, and appellant was "pushing" a pacifier into his mouth. Corbin asked appellant what had happened, but appellant did not reply.

---

[1] Portions of the record in this case were sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issue appellant has raised. Evidence and factual findings below that are necessary to address the assignment of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

Corbin collected T.L. in her arms and carried him upstairs. After T.L. was sleeping, Corbin returned to her friends' home. A "couple of hours later," around 10:30 p.m., appellant texted Corbin that T.L. was "whaling [sic]." When Corbin's suggestions for soothing T.L. were unsuccessful, Corbin returned home again. She found T.L. crying in appellant's lap on the sofa. Corbin put T.L. to bed, and appellant left.

The following morning, Corbin and Letcher noticed that T.L.'s hands were red and mildly swollen; however, by Sunday evening, the swelling was "much worse." On Monday, Corbin took T.L. to his pediatrician, who found broken fingers in both of T.L.'s hands and referred T.L. to Dr. Kuester, a pediatric orthopedic surgeon at VCU Health.

Dr. Kuester examined T.L. the following day, Tuesday, February 14, 2017, and ordered imaging of T.L.'s hands. Dr. Kuester determined that T.L. had "buckle fractures" in the fingers of both hands. Following a consultation with Dr. Robin Foster in the VCU Child Protection Team, Dr. Kuester ordered CT scans of T.L.'s head. T.L. was admitted to the hospital and stayed overnight. After speaking with Corbin, Dr. Kuester noted that T.L.'s injuries likely occurred while he was in appellant's care on Saturday night. Dr. Kuester told Corbin that T.L.'s injuries would appear inflamed approximately twelve hours after they were sustained, with the redness and swelling at their "worst" twenty-four hours after the injuries.

On February 14, 2017, Child Protective Services ("CPS") investigator Kathleen Bell received a complaint regarding T.L. and drove to VCU Health, where she met with Dr. Foster and other law enforcement officers. Dr. Foster opined that T.L.'s injuries were "not accidental" and that T.L.'s brother could not have caused them because "adult force" was required. Dr. Foster stated that T.L.'s injuries resulted either from "squeezing . . . or hyperexten[ding] . . . his fingers." Like Dr. Kuester, Dr. Foster noted that T.L.'s hands would "show symptoms anywhere from 12 to 24 hours after [the] trauma . . . to his hands." T.L.'s pediatrician told Bell that he had "no concerns"

about T.L.'s family; further, he reiterated Corbin's account that T.L. had been "inconsolable" while in appellant's care, forcing Corbin to return home.

On May 15, 2017, the Fredericksburg Department of Social Services ("the local agency") issued a finding of level two physical abuse against appellant. Appellant challenged the local agency's disposition. On June 24, 2017, appellant visited her orthopedic specialist, Dr. Constantine, for follow-up regarding a "locking" middle "trigger finger" in her left hand. Dr. Constantine opined that, based on appellant's condition, she had "decreased grip" and "decreased strength" in her left hand, and would find it "extremely difficult" to grip another individual with sufficient force to injure him.

Review proceedings were held on November 14, 2017, before an administrative hearing officer of the Department. At the hearing, Corbin testified that T.L. was behaving normally before the night that appellant babysat him. She noted that, when she returned home the first time to care for her older child, T.L. began screaming "unusually" while he was alone with appellant.

Appellant testified and denied that she injured T.L. She stated that her left trigger finger was "excruciatingly painful" and prevented her from gripping objects. Appellant also stressed that she had had surgeries for the same condition in two other fingers before February 2017. She had had surgery on another finger in her left hand and a finger in her right hand: the first surgery was in 2008 and the second was in August 2015. Appellant underwent a third "trigger finger" surgery in December 2017 after T.L. was injured. Nevertheless, appellant conceded that she was not receiving disability benefits and admitted that she never told Corbin that she suffered any impairment in her hands before she babysat Corbin's children. She also acknowledged that she never mentioned her finger limitations to the police or the Department and first disclosed it after the local agency's finding against her.

The hearing officer for the Department found that T.L.'s injuries were not accidental and could not have been inflicted without "adult strength." The hearing officer determined that appellant and T.L.'s mother, Elizabeth Corbin, were the only adults who were alone with T.L. on the evening of February 11, 2017. Citing Corbin's testimony regarding T.L.'s behavior after he was alone with appellant and the opinions of the VCU Health medical care providers, the hearing officer concluded that "it [wa]s more likely than not that [appellant] caused [T.L.'s] injury." The hearing officer rejected appellant's assertion that she lacked sufficient hand strength to cause T.L.'s injury. The hearing officer stressed that, on the night T.L. was injured, appellant engaged in activities requiring "a level of dexterity and strength."

On December 18, 2018, the hearing officer upheld the local agency's finding. Appellant appealed the hearing officer's decision to the circuit court. After the circuit court considered the parties' arguments, it issued a letter ruling on January 14, 2021, concluding that substantial evidence supported the hearing officer's decision. On May 17, 2021, the circuit court entered an order affirming the Department's decision. This appeal followed.

Analysis

Appellant argues that the evidence was insufficient to support the hearing officer's decision. She generally challenges the weight given to the agency's evidence by the hearing officer, and she specifically contests Corbin's credibility. Appellant stresses that Corbin provided conflicting accounts regarding when she first observed the injuries to T.L.'s hands and how the injuries possibly occurred. Appellant suggests that Corbin withheld information from the police and the social worker that T.L. had fallen from a "bouncy seat" while in his maternal grandmother's care, disclosing it only to VCU Health physician, Dr. Cho, upon T.L.'s admission to the hospital.

Further, appellant asserts that her evidence demonstrated she lacked the "grip strength" necessary to cause T.L.'s injuries. Citing medical opinions that T.L.'s injuries resulted from either

- 5 -

"forceful gripping" or "marked hyperextension," she contends that she was capable of neither due to the painful trigger finger in her left hand. Appellant maintains that the hearing officer's conclusion to the contrary ignored her medical evidence and testimony and was based on unsupported findings that she used her hands to place T.L. in a nap sack, prepared a bottle for him, opened a ginger ale for P.L., and "halved" a child's vitamin. She concedes, however, that "[n]othing in the record suggests that [she] is not capable of using her hands" – only that "[g]ripping objects with any force or strength can be challenging."

Appellant also maintains that substantial evidence does not support the conclusion that she injured T.L. while Corbin was upstairs with P.L. She emphasizes that T.L. was still in the swing when Corbin returned downstairs after hearing him cry and that T.L. went to bed without incident afterward.

In a related argument, appellant challenges the medical evidence suggesting that T.L.'s injuries occurred while she was babysitting. She contends that Dr. Kuester's opinion that the injury occurred Saturday night should be discounted because the record does not demonstrate how she reached that opinion. Appellant challenges Dr. Foster's opinions generally because she maintains that "no evidence" established that Dr. Foster examined T.L. or reviewed his records before she reached her opinions.

Finally, appellant argues that the hearing officer's finding that Corbin and appellant were the only adults alone with T.L. on Saturday night is only "partially correct." Appellant notes that Letcher had been alone with his son earlier on Saturday. Further, she suggests that Bell's elimination of Letcher as the perpetrator undermined Bell's credibility because Bell relied on Letcher's polygraph examination in violation of CPS policy prohibiting the admission of such results.

"Judicial review of a child protective services founded disposition of child abuse is governed by the Administrative Process Act (APA), codified at Code §§ 2.2-4000 [et seq.]." Jones v. West, 46 Va. App. 309, 322 (2005) (citing Code § 63.2-1526(B)). Under the APA, the "burden shall be upon the party complaining of agency action to designate and demonstrate an error of law subject to review by the court." Code § 2.2-4027. Judicial review of "an agency's factual findings 'is limited to determining whether substantial evidence in the agency record supports its decision.'" Thormac, LLC v. Dep't of Alcoholic Bev. Control, 68 Va. App. 216, 223 (2017) (quoting Avante at Lynchburg, Inc. v. Teefey, 28 Va. App. 156, 160 (1998)).

"The phrase 'substantial evidence' refers to 'such relevant evidence as a reasonable mind *might* accept as adequate to support a conclusion.'" Mulvey, 41 Va. App. at 603 (quoting Va. Real Estate Comm'n v. Bias, 226 Va. 264, 269 (1983)). "The reviewing court may 'reject [the] agency's factual findings only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion.'" Va. Bd. of Med. v. Hagmann, 67 Va. App. 488, 500 (2017) (quoting Va. Ret. Sys. v. Blair, 64 Va. App. 756, 765 (2015)). Indeed, "[w]hen an appeal presents issues of fact, this Court 'defer[s] to the agency just as we would a jury or a trial court.'" New Age Care, LLC v. Juran, 71 Va. App. 407, 421 (2020) (quoting Citland, Ltd. v. Commonwealth ex rel. Kilgore, 45 Va. App. 268, 274 (2005)). "The circuit court's role in such an appeal 'is equivalent to an appellate court's role in an appeal from a trial court' ruling." Hagmann, 67 Va. App. at 499 (quoting Comm'r v. Fulton, 55 Va. App. 69, 80 (2009)). On appeal, "the reviewing court must view the facts 'in the light most favorable to sustaining the agency's decision.'" Id. at 500 (quoting Blair, 64 Va. App. at 770).

"Credibility determinations are factual findings subject to this same standard." Id. "[T]his Court cannot say a witness' testimony is inherently incredible unless it is 'so contrary to human experience as to render it unworthy of belief.'" Lambert v. Commonwealth, 70 Va. App.

740, 759 (2019) (quoting Johnson v. Commonwealth, 58 Va. App. 303, 315 (2011)). "The mere fact that a witness may have . . . given inconsistent statements during the investigation of a[n] [offense] does not necessarily render the testimony unworthy of belief." Juniper v. Commonwealth, 271 Va. 362, 415 (2006). Instead, such circumstances are "appropriately weighed as part of the entire issue of witness credibility, which is left to the [fact finder] to determine." Id.; Kelley v. Commonwealth, 69 Va. App. 617, 626 (2019).

The hearing officer's opinion included detailed findings of fact. The hearing officer found that Corbin was credible when she reported that T.L.'s behavior was normal before appellant cared for her and that she heard T.L. "scream" while appellant was alone with him. Dr. Kuester's medical history from Corbin on February 15, 2017, corroborates Corbin's account, noting T.L. had not been "fussy" during the preceding five days, despite having a cold.

At the hearing, Corbin testified that T.L.'s hands were "red and . . . a little swollen" on the morning after appellant babysat him, but by Sunday night, the swelling was "much worse." Corbin told Bell that she reported to VCU Health that the swelling appeared the morning after appellant babysat; the sequence of events outlined in Dr. Kuester's notes corroborate Corbin's account to Bell. See Lambert, 70 Va. App. at 759-60 (holding that a witness' testimony was not inherently incredible when it was corroborated by other evidence). Moreover, although Corbin admitted to Bell that she initially told the police that T.L.'s hands were "reddish pink" on Saturday, she explained that she misspoke because "she was going on a day or two with no sleep and lack of food" and "was under a lot of distress."

"It is not unusual for there to be conflicting evidence in contested cases, and it is the job of the [Department], as factfinder, to resolve those conflicts." Blair, 64 Va. App. at 769. Moreover, that appellant can point to "[t]he existence of evidence in the record supporting a contrary conclusion does not establish that there is not substantial evidence in the record to

- 8 -

support [the Department's] determination." Id. Here, although the record demonstrates that the hearing officer was presented with conflicting accounts, the record was sufficient to support her findings because the evidence does not demonstrate that a "reasonable mind would *necessarily* come to a different conclusion" than that reached by the hearing officer. Hagmann, 67 Va. App. at 500.

Further, in her role as fact finder, the hearing officer was free to reject appellant's testimony denying that she injured T.L., as well as her treating physician's opinion that she lacked the capacity to do so. See Flanagan v. Commonwealth, 58 Va. App. 681, 702 (2011). Although appellant's physician opined that she lacked sufficient "grip" strength in her left hand to injure another person, that opinion did not address whether appellant had the capacity to injure an infant with her right hand. Appellant had not undergone any recent surgeries on her hands when she cared for T.L., and only one finger on her left hand had not yet been surgically treated. According to appellant's physician, surgical treatment was "over 95%" successful.

Appellant admitted that she was not disabled and had worked as a teacher's assistant and cafeteria monitor during the weeks preceding T.L.'s injury. She also conceded at the hearing that she never mentioned a debilitating hand condition to Corbin before she babysat the children, or to the Department or to the police during their investigation. In fact, she first claimed she had physical limitations only after the local agency issued its finding against her in May 2017. During her police interview in February 2017, appellant agreed that she performed several tasks requiring dexterity and hand strength, including opening a vitamin bottle and a ginger ale.

To the extent that appellant asserts that Dr. Kuester's opinion regarding the time of T.L.'s injuries lacked sufficient foundation to merit consideration, appellant appears to suggest that her opinion should be discounted because it was not tested through cross-examination. But it is well established that "[t]he rules of evidence are considerably relaxed in administrative proceedings, and

- 9 -

the findings of administrative agencies will not be reversed solely because evidence was received which would have been inadmissible in court." Bias, 226 Va. at 270. "If the agency relies on hearsay evidence, the court reviewing the sufficiency of that evidence on appeal may give it the same weight as any other record evidence." Carter v. Gordon, 28 Va. App. 133, 141 (1998).

Finally, despite appellant's assertion to the contrary, Dr. Foster specifically stated that she examined T.L. and reviewed his records before rendering her opinion. Dr. Foster also opined that a single "trigger finger" would not preclude an adult from applying the force necessary to cause T.L.'s injuries. Accordingly, the record demonstrates that there was substantial evidence to support the Department's finding, and the circuit court did not err in affirming that decision.

Conclusion

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.