COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present: Judges Athey, White and Frucci

JOHNNY RAY BENEFIELD

OPINION BY

v.      Record No. 0487-24-3          JUDGE KIMBERLEY SLAYTON WHITE
                                      NOVEMBER 19, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF PULASKI COUNTY
Bradley Finch, Judge

(Frederick M. Kellerman; Stone & Kellerman, P.C., on briefs), for
appellant. Appellant submitting on briefs.

(Jason S. Miyares, Attorney General; Theophani K. Stamos, Deputy
Attorney General; Susan Barr, Senior Assistant Attorney General;
Jessica P. Preston, Assistant Attorney General, on briefs), for
appellee. Appellee submitting on briefs.


Johnny Ray Benefield was conditionally released from civil confinement following his

conviction for sexual offenses and his designation as a sexually violent predator ("SVP"). He

petitioned to remove the conditions of his release and his SVP status at a hearing where the trial

court heard testimony from two doctors and a probation officer. The Commonwealth opposed

Benefield's petition. Following an ore tenus hearing, the trial court denied his petition and

ordered him to remain on conditional release.

Benefield appeals the denial of his petition. He argues that the trial court erred in

disregarding the testimony, reports, and actuarial risk assessments tending to show that Benefield

does not continue to meet the statutory criteria of an SVP, all arguments he made to the trial

court. He asserts that the Commonwealth did not discharge its burden of proving by clear and

convincing evidence that he remains an SVP. Because the trial court in ruling on Benefield's

petition below applied two conflicting evidentiary standards and allocated the burden of proof to both parties, we reverse and remand.

BACKGROUND

In 2005, the trial court of Pulaski County convicted Benefield of aggravated sexual battery, taking indecent liberties with children, attempted sexual abuse of a child, and possession of child pornography. The offenses arose from the sexual abuse of his daughter. Benefield "showed his daughter pornography, purchased lingerie for her, and . . . tried to rape her, pulling at her panties." He subsequently admitted that his penis touched his daughter's "bare" leg on at least one occasion while the two were play wrestling and "rough housing." He explained that "[t]he Internet was [his] downfall," as he used it to access pornography and a "Dad and daughter's" group chat room.

In May 2008, the trial court adjudicated Benefield a sexually violent predator ("SVP") based on diagnoses of paraphilic disorders (hebephilia and compulsive use of pornography), exhibitionist disorder, personality disorder with antisocial and avoidant personality traits, and substance use disorders. The court did not civilly commit him for inpatient treatment but instead ordered his release under the terms of a conditional release plan.

Benefield generally complied with the conditions of his release for nearly 15 years. He completed substance abuse counseling and "passed all of his urine screens and his polygraphs concerning the topic." He consistently attended and was "actively engaged" in treatment groups and graduated from a sex offender treatment program in 2016. His probation officer, C.J. Castillo, reported that Benefield was "very cooperative," attended meetings as instructed, complied with registration requirements, had no unsupervised contact with minors, graduated from multiple programs, did not use alcohol, maintained a stable residence, complied with his curfew and GPS monitoring, and maintained employment. Castillo opined that Benefield

- 2 -

adjusted "excellent[ly]" to supervision and was "in full compliance" with the plan. While in treatment, Benefield also "develop[ed] a relapse prevention plan" that identified and implemented several "rules" for managing his risk.

Benefield was not completely compliant with his conditional release, though, as he persistently used the internet to view "soft-core" pornography. Nevertheless, given that he had been "at liberty in the community" without committing "a new sex offense . . . for over 14 years," actuarial risk assessment tools projected that he presented a "very low risk" of "sexually recidivating." Specifically, his risk of reoffending halved every five years, and by the fall of 2022, he had a "2.1% likelihood of being charged or convicted of a new sexual offense within 5 years."

In March 2022, Benefield petitioned the Pulaski County Circuit Court under Code § 37.2-914 to remove the conditions of his release because he alleged that he was no longer an SVP. He argued that he no longer met the statutory criteria defining an SVP. The Commonwealth responded to the petition by opposing the removal of Benefield's SVP status or the modification of his conditions of release and requesting that the trial court appoint experts to evaluate Benefield and hold an evidentiary hearing under Code § 37.2-914.

The hearing on the petition was held on September 28, 2023. The trial court qualified Drs. Dennis Carpenter and Rebecca Loehrer as experts in the diagnosis and treatment of sex offenders. Both experts opined that Benefield no longer met the criteria of an SVP.

Dr. Carpenter explained that Benefield's adjustment to supervision was "excellent," having committed no new offenses and remaining "essentially" in compliance with his conditional release plan for nearly 15 years. Regarding Benefield's use of soft-core pornography, Dr. Carpenter noted that Benefield "apparently . . . [had] not [been] forbidden from viewing soft core pornography" by his treatment providers or probation officers. Dr. Carpenter

stated that Benefield "should have been prohibited from the use of all pornography" because using any pornography could be "a springboard for . . . reoffending." He opined that Benefield was "addicted" to pornography and had used it as a "coping mechanism" for "many of the years that he was on conditional release."

But Dr. Carpenter emphasized that, despite using soft-core pornography, Benefield had completed sex offender treatment and had a "very low risk" of "sexually recidivating." He viewed Benefield's successful treatment and low actuarial risk of offending again as factors that outweighed his use of soft-core pornography. He concluded that Benefield did not "find[] it difficult to control his predatory behavior" and was not "likely to engage in sexually violent acts," the statutory criteria a person must meet to be an SVP. *See* Code § 37.2-900. Finding these criteria absent in Benefield, Dr. Carpenter recommended the removal of his designation as an SVP.

Similarly, Dr. Loehrer concluded that Benefield's disorders were "in sustained full remission" and that "he ha[d] not struggled with urges to act . . . in fifteen years." She opined that Benefield had developed and employed "coping strategies" to manage his behavior and had "shown a committed desire to live his life in a productive manner and to maintain his change in criminal thoughts and behaviors." He had "identified his areas of risk and developed a plan for dealing with risk factors." Moreover, Dr. Loehrer explained that Benefield's risk of reoffending would "continue to decline as he" aged. Dr. Loehrer acknowledged Benefield's use of soft-core pornography but concluded that "soft porn doesn't appear to trigger him in the way that . . . hardcore pornography and child pornography" did. She also noted that Benefield had been "able to manage over many years using the soft porn without re-offending or using drugs or being tempted to go back into that old pattern." Accordingly, Dr. Loehrer too recommended that Benefield's designation as an SVP be removed.

- 4 -

J.C. Castillo, Benefield's probation officer who had supervised him for 13 years, testified that Benefield "was doing well" on supervision. Castillo emphasized that Benefield was "very cooperative," avoided alcohol, and attended all meetings. He testified that Benefield was "very honest" about his behavior and "proactive[ly]" alerted Castillo if "anything popp[ed] up" that might constitute a violation of his release plan.

Castillo had implied to Benefield that although he could not search for or watch movies solely with a "[p]rurient interest," it was "different" if he was watching a movie that "happens to [contain] an incidental nude scene or something that's part of the storyline." Castillo clarified that Benefield was not permitted to intentionally search for movies or other media "specifically for sexual gratification" and that he had violated that restriction by "actively searching" the internet for "sexually stimulating" content. But Benefield was honest about his pornography habits, and Castillo did not report these violations to the court because he viewed Benefield's soft-core-pornography-viewing behavior as "distinct[]" from the use of hardcore pornography.

The trial court denied Benefield's petition. The court found that pornography was involved in Benefield's underlying offenses and contributed significantly to the original adjudication as he had "viewed pornography with his child victim." It emphasized that Benefield had not "managed the temptation to use pornography" and had demonstrated "a strong compulsion to use pornography," which was part of his "offense cycle." The court also noted that Benefield had violated Castillo's instruction not to seek out sexually explicit material on the internet, which could have been brought to the court as a violation of his conditional release. It ruled that Benefield continued to meet the criteria of an SVP and ordered that he remain on conditional release.

Importantly, the court's final order found both that (1) Benefield had "failed to prove by a preponderance of the evidence that he no longer meets criteria as a[n] [SVP]," and (2) "the

Commonwealth ha[d] proven by clear and convincing evidence that [Benefield] continues to meet criteria as a[n] [SVP]."

On appeal, Benefield challenges the trial court's order denying his petition. The first question thus presented is which burden of proof applies, and with whom it lies, when adjudicating a conditionally released SVP's petition to remove the conditions of his release. The second question we address is whether the trial court clearly erred in weighing the evidence presented in a Code § 37.2-914 hearing while applying two conflicting standards of proof and while allocating the burden of proof to both parties.

ANALYSIS

In the wake of extensive litigation regarding the constitutionality of involuntarily committing an SVP, the United States Supreme Court held "that the 'clear and convincing' evidentiary standard is the minimum standard that may be used in a civil commitment proceeding." *Shivaee v. Commonwealth*, 270 Va. 112, 126 (2005) (quoting *Addington v. Texas*, 441 U.S. 418, 432-33 (1979)). Consistent with this national requirement, Virginia's Sexually Violent Predators Act ("Act") requires proof "by clear and convincing evidence" that a respondent is an SVP before he may be civilly committed. Code § 37.2-908(C). After the respondent has been adjudicated an SVP, he may be either "committed" or subject to an "alternative[] to commitment," such as conditional release pursuant to a conditional release plan. Code § 37.2-908(D), (E). The law provides that an SVP, whether committed or conditionally released, may petition for his release or the removal of the conditions placed on release.

Code § 37.2-911 sets forth the procedure through which a *committed* respondent may petition for his release. The respondent's release may be either conditional (if "he is no longer in need" of inpatient treatment) or unconditional (if "he is no longer a[n] [SVP]"). Code § 37.2-911(A). On receiving a proper petition, the court will hold a hearing at which the

- 6 -

Commonwealth bears the burden of proving by clear and convincing evidence that the committed respondent remains an SVP. Code § 37.2-911(B) (requiring a Code § 37.2-910 hearing, which places a clear-and-convincing burden of proof on the Commonwealth. Code § 37.2-910(C)).

A different statute controls how an *uncommitted* respondent—someone adjudicated an SVP but conditionally released—may petition to remove or modify the conditions of his release. An uncommitted respondent may petition "[t]he court that placed [him] on conditional release" to "modify conditions of release or remove conditions." Code § 37.2-914(A).

Code § 37.2-911, governing a committed respondent's petition, clarifies that the Commonwealth bears the burden of proving by clear and convincing evidence that the respondent remains an SVP. But Code § 37.2-914, which governs an uncommitted respondent's petition, is silent on the burden of proof. Instead, it merely provides that if there is an objection to the uncommitted respondent's petition, the court must "conduct a hearing" at which the interested parties "shall have an opportunity to present evidence." Code § 37.2-914(B).

No appellate cases have interpreted Code § 37.2-914, let alone addressed the relevant burden of proof at a hearing under the statute. Thus, there is uncertainty as to the burden of proof that applies to an uncommitted respondent's petition to remove conditions of his release. The final order in this case evinces this uncertainty. The trial court simultaneously found that (1) Benefield bore the burden of proving by a preponderance of the evidence that he was no longer an SVP, which he failed to discharge, and (2) the Commonwealth bore the burden of proving by clear and convincing evidence that Benefield was still an SVP, which it successfully discharged. The trial court's first finding would be in accord with what generally a movant must do to succeed in a civil proceeding; the trial court's second finding is more in line with the enhanced burden imposed upon the Commonwealth in other SVP proceedings. The premises prompting

- 7 -

these two findings contradict one another both as to what burden of proof applies and which party bears it. We discuss this issue below.

### A. Burdens of Proof in the Act

In general, the moving party bears the burden of proof. *Stockdale v. Stockdale*, 33 Va. App. 179, 184 (2000) (citing *Bostick v. Bostick-Bennett*, 23 Va. App. 527, 535 (1996)). But the Supreme Court of Virginia has held that given the due process concerns of the Act, "[t]he burden of proof by clear and convincing evidence rests on the Commonwealth, not the respondent, and never shifts." *Gibson v. Commonwealth*, 287 Va. 311, 319 (2014) (citing *Dobson v. Commonwealth*, 260 Va. 71, 74-75 (2000)). The Act affords the respondent greater procedural protections than an ordinary civil matter due to the "potential involuntary loss of liberty" that the respondent faces. *See id.* at 315-16; *see also Townes v. Commonwealth*, 269 Va. 234, 240 (2005) ("Civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." (quoting *Addington*, 441 U.S. at 425)). One of the Act's heightened procedural protections is to require the Commonwealth, not the respondent, to bear the burden of proving the need for civil commitment.

Another procedural protection is the standard that the evidence must meet for the Commonwealth to satisfy its burden. The "weight and gravity" of a respondent's "interest in the outcome of a civil commitment proceeding . . . requires the [Commonwealth] to justify confinement by [a standard of] proof more substantial than a mere preponderance of the evidence." *Gibson*, 287 Va. at 319 (quoting *Shivaee*, 270 Va. at 126).

But the Act mentions a standard of proof in only two places. It does not mention preponderance of the evidence anywhere. It mentions clear and convincing evidence twice. *See id.* The first is Code § 37.2-908, which requires a factfinder making an initial SVP determination to find "by clear and convincing evidence" that the respondent is an SVP. The second is Code

- 8 -

§ 37.2-910, where the Commonwealth must "prove to the court by clear and convincing evidence that the respondent remains a[n] [SVP]" when assessing whether he qualifies for release from civil confinement.

Code § 37.2-914's procedure for removing conditional release does not state a standard of proof. In the absence of such language, we must decide what standard of proof applies to a hearing under Code § 37.2-914.

This issue turns in part on whether conditional release is a form of civil commitment or a lesser restriction that does not carry the same heightened due process concerns that civil commitment creates. We note that the Supreme Court of Virginia has only considered the Act to the extent that it entails a respondent's actual physical confinement "in a mental health facility," following their release from prison. *See, e.g.*, *Gibson*, 287 Va. at 315 ("The [Act] sets forth the statutory scheme that permits a person convicted of a sexually violent offense to be declared a[n] [SVP] and committed to involuntary secure inpatient treatment."); *McCloud v. Commonwealth*, 269 Va. 242, 252-53 (2005) (discussing an SVP who was "involuntarily committed to a secure mental health facility"); *Shivaee*, 270 Va. at 118-19 (same). We thus lack guidance from our Supreme Court on whether conditional release falls within the pale of civil commitment such that it deserves the same protections.

### B. Burden of Proof for Code § 37.2-914

The forcible civil commitment of an SVP is constitutional "so long as the confinement 'takes place pursuant to proper procedures and evidentiary safeguards.'" *Shivaee*, 270 Va. at 120 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 357 (1997)). One evidentiary safeguard is the standard of proof that a court applies in a civil commitment proceeding.

A standard of proof "serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Addington*, 441 U.S. at 423.

Proof by preponderance of the evidence means that the evidence must make a proposition "appear more likely or probable" than not before the factfinder may consider the proposition to be proven. *Lamar Co., LLC v. Bd. of Zoning Appeals*, 270 Va. 540, 546 n.5 (2005) (quoting *Northern Virginia Power Co. v. Bailey*, 194 Va. 464, 471 (1952)). It is the lowest standard of proof and is "typical [for a] civil case involving a monetary dispute between private parties." *Addington*, 441 U.S. at 423. Under this standard, parties "share the risk of error [in the outcome] in roughly equal fashion" due to society's "minimal concern" with how the dispute plays out. *Id.*

The next standard of proof is clear and convincing evidence, meaning that the evidence must produce "a firm belief or conviction as to the allegations sought to be established." *Fred C. Walker Agency, Inc. v. Lucas*, 215 Va. 535, 540-41 (1975). It is the "intermediate" standard of proof, "typical . . . in civil cases involving . . . quasi-criminal wrongdoing by the defendant." *Addington*, 441 U.S. at 424. The defendant's interest in the outcome of these cases is "deemed to be more substantial than mere loss of money," and, "to reduce the risk to the defendant of having his reputation tarnished erroneously," the clear and convincing standard "increase[s] the plaintiff's burden of proof . . . to protect particularly important individual interests." *Id.*

"In considering what standard should govern in a civil commitment proceeding, we must assess both the extent of the individual's interest in not being involuntarily confined indefinitely and the state's interest in committing [an SVP] under a particular standard of proof." *Id.* at 425. An individual's interest in a civil commitment proceeding includes not being subjected lightly to "indefinite[]" confinement. *See id.* But it also embraces protection from the "adverse social consequences" and "stigma" of an SVP designation, which may produce "a very significant impact" on the individual. *See id.* at 425-26. On the other end, the Commonwealth has a countervailing interest to provide care for SVPs and protect the community from their "dangerous tendencies" without having to clear undue evidentiary hurdles. *Id.* at 426. In

- 10 -

*Addington*, the United States Supreme Court implied that by "creat[ing] the risk of increasing the number of individuals erroneously committed," the preponderance standard in civil commitment may not advance the state's interest at all. *See id.*

In light of the foregoing discussion, we hold that the Commonwealth bears the burden of proof under Code § 37.2-914 and that it must meet its burden by clear and convincing evidence.

We find that the statute and the Act as a whole support this holding. The Act only mentions a standard of proof twice, and that is the clear and convincing standard. Moreover, the two provisions that mention it involve determining whether a person "is" or "remains" an SVP. Code § 37.2-908(C); Code § 37.2-910. Impliedly, Code § 37.2-914 also involves a determination of whether a person remains an SVP. To "modify" or "remove" a condition of release under Code § 37.2-914(A), the trial court may have to reevaluate whether the respondent continues to meet the SVP criteria. This reevaluation occurred in Benefield's case when he asked the trial court to remove his designation as an SVP.[1] Given that the Act calls for clear and convincing proof when a person is faced with the establishment or continuance of an SVP designation—and the adverse consequences and stigma that follow it—we believe that the due process concerns underlying civil commitment carry over to the removal of that designation.

We also note that Code § 37.2-914's language undercuts the likelihood that its drafters contemplated that the movant would bear the burden of proof. Code § 37.2-914 allows for numerous parties to petition for the removal of a respondent's conditions. The Department of Behavioral Health and Developmental Services, the supervising parole or probation officer, the Attorney General, or the respondent may each make the petition. It seems unlikely that the

---

[1] We assume that Code § 37.2-914's language permitting the removal of conditions of release encompasses the removal of a person's designation as an SVP, which would seem to be a condition of release. *Cf.* Code § 37.2-911 (allowing a court to unconditionally release a committed respondent if his "condition has so changed that he is no longer a[n] [SVP]").

legislature intended for the allocation of the burden of proof to change depending on which party brings the petition.

Additionally, in this context, conditional release is a form of civil commitment that merits similar due process protections as those required to confine a person to a mental health facility. Code § 37.2-914 is part and parcel of Virginia's Civil Commitment of Sexually Violent Predators Act. *See Gibson*, 287 Va. at 314 ("The Commonwealth filed a petition for the civil commitment of [the defendant] as a[n] [SVP] pursuant to the Civil Commitment of Sexually Violent Predators Act (SVPA), *Code §§ 37.2-900 through -921*." (emphasis added)). A natural reading of the Act puts Code § 37.2-914 in its sweep, and thus the Act's attendant due process guarantees should apply as equally to Code § 37.2-914 as to its other provisions. *See Shivaee*, 270 Va. at 126; *Ford Motor Co. v. Gordon*, 281 Va. 543, 549-50 (2011) ("[W]e have a duty, whenever possible, to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal." (quoting *Oraee v. Breeding*, 270 Va. 488, 498 (2005))).

Furthermore, the Act permits a court to place an SVP on conditional release but does not establish a duration or end date. *See* Code § 37.2-912. Conditional release, and the conditionally released respondent's continuing SVP designation, are thus indefinite. *See Addington*, 441 U.S. at 425. The unspecified duration of conditional release distinguishes it from probation, parole, and other time-limited restrictions that may justify the use of a lesser standard of proof. And the restrictions that conditional release places on a person are not minor. *See, e.g.*, Code § 37.2-912(A) (requiring respondents "[i]n all cases of conditional release" to wear a tracking device "at all times while [they are] on conditional release"). For Benefield, these restrictions include meeting with his parole officer "as instructed," having no unsupervised contact with minors, attending sex offender treatment "as required," abstaining from alcohol and

pornography, complying with a curfew, and submitting to GPS monitoring. Conditional release substantially impairs freedom for an indefinite duration, "constitut[ing] a significant deprivation of liberty" that should trigger the Act's due process protections. *See Townes*, 269 Va. at 240 (quoting *Addington*, 441 U.S. at 425).

Finally, Code § 37.2-914 calls for the clear and convincing standard when viewed within the *Addington* framework laid out above. The procedure for removing conditions of release or an SVP designation is a "quasi-criminal" civil proceeding. The respondent's interest in the proceeding's outcome is "more substantial" than the money damages of ordinary civil litigation. "[T]he risk to the [respondent] of having his reputation tarnished erroneously" would increase if a lesser standard of proof obtained. *See Addington*, 441 U.S. at 424. Preponderance of the evidence would provide insufficient protection. It is consistent with *Addington* to raise the Commonwealth's standard of proof to safeguard a conditionally released SVP's "particularly important individual [liberty] interest[]" in removing, where deserved, the constraints on his liberty and the stigma of an SVP status. *See id.*

When compared to safeguarding the individual interest at play, the higher standard of proof does not substantially undermine the Commonwealth's interest in protecting the community. The Commonwealth already succeeded in shouldering that burden to prove that Benefield was an SVP in the initial determination. And a conditionally released SVP has already been determined not to need "secure inpatient treatment," because his threat to society is less. *See* Code § 37.2-911(A), Code § 37.2-912(A). This is further reason for the Commonwealth to have the greater risk of an erroneous outcome in the adjudication of an SVP's request to remove the conditions of their release.

We conclude that Code § 37.2-914 merits a heightened standard of proof to protect the due process rights of those subject to its procedure. In opposing a petition to modify or remove

the conditions of a conditionally released SVP, the Commonwealth must prove its case by clear and convincing evidence.

### C. Benefield's Hearing

The appropriate burden and standard of proof at Benefield's hearing was that the Commonwealth had to prove by clear and convincing evidence that he remained an SVP. But the trial court applied an ambiguous legal standard by denying Benefield's motion based on contradicting burdens and standards of proof. The trial court found that Benefield had not proven by a preponderance of the evidence that he was not an SVP anymore *and* found that the Commonwealth had proven by clear and convincing evidence that he remained an SVP. These statements demonstrate that the trial court did not apply the correct legal standard.

In this situation, we must reverse and remand, at least in part. At Benefield's hearing, "*all* the evidence had been presented." *Khine v. Commonwealth*, 75 Va. App. 435, 452 (2022). "The only question [is] how the trial court, sitting as the factfinder, should weigh the evidence." *Id.* Given that the trial court "employed an improper legal standard," the "proper appellate response is to vacate the [judgment] and remand the case to the trial court with instructions." *Edwards v. Commonwealth*, 49 Va. App. 727, 742 (2007). Given the confusion expressed in the trial court's findings over which standard governs, remand is appropriate.[2] On remand, the trial court should assess whether the Commonwealth carried its burden of proving by clear and convincing evidence that Benefield continues to meet the SVP criteria.

---

[2] Certainly, if the trial court had made alternative rulings, a harmless error analysis may have been appropriate here. But the trial court's oral opinion did not state the standard or burden of proof by which it weighed the evidence, and the written opinion, drafted by the Attorney General's office at the trial court's request, uses contradictory standards and burdens. The litigants were entitled to an unambiguous standard and burden of proof to be applied, and so, to correct this, we remand to the trial court to assess the evidence under the proper standard and burden.

CONCLUSION

The trial court erred by applying conflicting standards of proof when it should have considered only whether the Commonwealth proved that Benefield remained an SVP by clear and convincing evidence. We reverse the judgment and remand for the trial court to determine whether the Commonwealth carried its burden of proving by clear and convincing evidence that Benefield continues to meet the criteria for an SVP.

*Reversed and remanded.*